## LAKE ERIE & WESTERN RAILROAD COMPANY
## v. FORD.

[No. 20,875. Filed October 23, 1906.]

1. PLEADING. — Complaint. — Negligence. — Railroads. — Setting Fires.—Excuses.—A complaint alleging generally that defendant railroad company negligently (1) omitted to use a safe spark-arrester; (2) used a spark-arrester with unusually large and dangerous holes therein; (3) operated its locomotive with the trap door down, thereby increasing the draft, and (4) operated its locomotive with a high and unusual pressure of steam, thereby setting fires and causing plaintiff's injuries, is sufficient as against a demurrer without an allegation that the defects in the spark-arrester could not be more explicitly set out because the locomotive was kept in defendant's exclusive possession. p. 208.

2. SAME. — Complaint.—Negligence.—Railroads.—Setting Fires. —Defective Spark-Arrester.—Plaintiff's Ignorance of.—Inferences.—Evidence.—An allegation in the complaint that because defendant has kept the exclusive possession of its engine the plaintiff is unable to set out the defective condition of the spark-arrester, does not cause an inference that plaintiff cannot prove the defective condition thereof, since such condition may be proved by the escape of large and dangerous coals through such arrester. p. 208.

3. SAME.—Complaint.—Negligence.—Railroads.—Defective Spark-Arrester.—Notice.—In an action against a railroad company for negligently setting fires it is not necessary to allege that the defendant had notice of the defects in the spark-arrester causing the fire. p. 208.

4. SAME.—Variance.—Answers to Interrogatories.—The question of a variance between the pleading and proof cannot be raised on the answers to the interrogatories. p. 209.

5. TRIAL.—Instructions.—Railroads.—Setting Fires.—Care Required.—An instruction, in an action against a railroad company for negligently setting fires, that if the jury found that the premises adjacent to the track were unusually dry and that a strong wind was blowing in the direction of plaintiff's property defendant would be required to use a greater degree of care than usual, is erroneous, ordinary care under the circumstances being the legal standard. p. 209.

6. WORDS AND PHRASES.—"Negligence."—"Negligence" is a negative word and imports the absence of the degree of care which it was the duty of defendant to use. p. 211.

7.  TRIAL. — *Instructions.* — *Negligence.*—*Care Required.*—*Railroads.*—*Setting Fires.*—An instruction that if the jury finds that if extraordinary circumstances existed causing a locomotive to set fires more easily than usual greater care than usual should be used, does not mean the same as that the railroad company must use ordinary care under the circumstances, and that extraordinary circumstances might be considered in determining the requirements of such ordinary care; and such instruction is misleading.   p. 212.

8.  NEGLIGENCE. — *Standard of Care.* — *Variance.* — The legal standard of ordinary care under the circumstances does not vary in negligence cases, though the circumstances to which such test is applied varies with each case; and the greater the danger in a particular case, the greater the diligence required by ordinary care.   p. 213.

9.  APPEAL AND ERROR.—*Instructions.*—*Misleading.*—*Reversible Error.*—The giving of a material misleading instruction is reversible error.   p. 213.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Lewis Ford against the Lake Erie & Western Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*John B. Cockrum, Shirts & Fertig* and *Hawkins & Smith,* for appellant.

*Dan Waugh, Kane & Kane* and *Nash & Teter,* for appellee.

GILLETT, J.—Complaint by appellee to recover damages for loss of property by fire, by reason of the alleged negligence of appellant. There was a verdict and judgment in favor of appellee. The question of the sufficiency of the complaint on demurrer is raised, but no useful purpose would be subserved by setting out the entire substance of that pleading. The first paragraph charged negligence, as respects the locomotive and its management, as follows: (a) Omitting to use a safe and sufficient spark-arrester; (b) using a spark-arrester with unusually large and dan-

gerous holes therein; (c) operating the locomotive with the trap-door down, thereby increasing the draft; (d) operating the locomotive with a high and unusual pressure of steam. Each and all of said acts and omissions are charged as the cause of the emitting of great and unusual quantities of large and dangerous coals and brands of fire, whereby a fire was set adjacent to the right of way, which spread to the property of appellee and destroyed it. The averments of said paragraph conclude with the allegation of certain matters pleaded by way of excuse, and as the principal objection which is offered to said paragraph is the claim that the pleading of such matters negatives the prior showing of proximate cause in the setting of the initial fire, it seems important to make a more particular statement of said concluding allegations. They are as follows: "That the plaintiff has had no experience with or knowledge of the mechanism or construction of locomotives or spark-arresters, or their management or operation, and has had no opportunity to make an examination or inspection of said locomotive or spark-arrester, as the same has been in the exclusive possession and control of the defendant, Lake Erie & Western Railroad Company, ever since; that all of the facts and information are and were at the time peculiarly within the knowledge of the defendant, Lake Erie & Western Railroad Company, therefore, the plaintiff cannot set out more specifically, than as herein set out, what mechanism or construction could or should have been used, or in what respect the spark-arrester was insufficient or unsafe, or whether said defects consisted in construction, or in not keeping the same in repair, and the plaintiff is also unable, for want of sufficient knowledge, to set out the facts constituting the negligence of the defendant, Lake Erie & Western Railroad Company, more specifically than as herein set out."

In view of the fact that various acts of negligence may be charged in one paragraph, and that, as against a de-

murrer, it is competent, in a very general way, to predicate an averment of negligence upon an act or omission, it seems that it was quite unnecessary, at least in the first instance, to have added the averments in question. We have concluded, however, that they do not have the effect of negativing in any essential degree the matter which precedes. They relate to the spark-arrester, and not to the negligent operation of the locomotive, and, so far from negativing the prior allegations, the matter in question, aside from the immaterial statement that the plaintiff could not allege whether the defects in the spark-arrester consisted in a defect of construction or a failure to keep in repair, consisted of matter of excuse for a failure to plead more specifically what was already quite sufficiently pleaded as against the assault of a demurrer. The mere facts that plaintiff had never seen the particular spark-arrester, and that all the facts concerning it were peculiarly within the knowledge of the defendant, do not lead to the inference that he could not establish sufficient facts concerning it to warrant a recovery under said paragraph. If he could not do this by the testimony of appellant's servants, it was nevertheless open to him to do so by the method of exclusion, viz., the elimination of every possible cause, aside from those charged, for the emitting of large and dangerous sparks and coals of fire.

Answering a further objection of appellant to said paragraph of complaint, we have to say that as a matter of pleading it was unnecessary to allege facts showing that it had notice or knowledge of the existence of holes in the spark-arrester caused by the bending or springing of the wires. This was covered by the averment of negligence. *Brookville, etc., Turnpike Co.* v. *Pumphrey* (1877), 59 Ind. 78, 26 Am. Rep. 76; *Ohio, etc., R. Co.* v. *Collarn* (1881), 73 Ind. 261, 38 Am. Rep. 134;

*Turner* v. *City of Indianapolis* (1884)., 96 Ind. 51; *Town of Spiceland* v. *Alier* (1884), 98 Ind. 467; *Cleveland, etc., R. Co.* v. *Wynant* (1885), 100 Ind. 160; *Pittsburgh, etc., R. Co.* v. *Kitley* (1889.), 118 Ind. 152; *Rodgers* v. *Baltimore, etc., R. Co.* (1898), 150 Ind. 397; *Indiana, etc., Traction Co.* v. *Jacobs* (1906), *ante,* 85, and cases cited. We regard the first paragraph of the complaint as sufficient, and the considerations suggested lead to the conclusion that the objections of appellant's counsel to the second paragraph of the complaint are not well taken.

Appellant was not entitled to judgment in its favor on the answers to interrogatories. It would serve no useful purpose to set them out. They fail to disclose that the setting of the fire was not the proximate cause of the destruction of appellee's property, and, so far as the matter of variance is concerned, in respect to the finding that the fire started in a manure pile, instead of in the adjoining barn, as alleged, we have to say that the question cannot be raised on answers to interrogatories. *Consumers Paper Co.* v. *Eyer* (1903), 160 Ind. 424; *Hartwell Bros.* v. *Peck & Co.* (1904), 163 Ind. 357; *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489.

Appellant complains of appellee's instructions five and six, which were given by the court in the order indicated by their numbers. They are as follows: "(5) It is the duty of a railroad to use all reasonable precaution in running and operating its trains, and in providing its engines with proper spark-arresters, so as to prevent injury to the property of others by sparks or fire emitted or thrown therefrom. (6) If you believe from all of the evidence and circumstances in the case that at the time and prior to the destruction of the property of the plaintiff, as alleged in his complaint, there were a number of wooden buildings and structures standing on either side of the defendant's track and in close proximity thereto,

including the barn or stable of said Melissa McFall in the town of Hobbs, and at such time it was, and for some time prior thereto it had been, unusually dry, thereby rendering such wood buildings and structures, including the barn or stable of said Melissa McFall, and also the property of the plaintiff herein, unusually dry, inflammable and easily set on fire by sparks and coals of fire emitted from defendant's engines in passing through said town, and that there was also at the time, and for several hours prior thereto had been, a strong wind blowing continuously across the defendant's track, in the direction of the barn or stable of said Melissa McFall, and the wooden buildings and structures near the defendant's track, including the property of the plaintiff herein, which greatly and unusually increased the danger and risk of setting fire to such buildings by sparks and coals of fire emitted or thrown from its engine in passing through said town, over ordinary times and conditions, and all of which facts and conditions the defendant knew at the time, the defendant, under such circumstances, would be required to use a greater degree of care in operating and running its engines through said town to prevent injury to such buildings or property by sparks or coals of fire emitted or thrown from its engine than it would at ordinary times and under ordinary conditions."

Assuming, without deciding, that it was not error for the court, in its fifth instruction, to use the term "reasonable precaution," instead of the preferable one, "ordinary care," and assuming further, since the care that the company was required to exercise was, so far as the element of law was concerned, to be measured by a fixed standard, which was to be fully complied with (Wharton, Negligence [2d ed.], §46), that it was proper to use the expression "all reasonable precaution," the question arises whether it is not likely that the jury was misled by the charge in the next instruction that in the circumstances therein hypo-

thetically stated "a greater degree of care" was required than in ordinary conditions. The sixth instruction would have been proper, had the court charged, after stating to the jury hypothetically the conditions which existed, leaving it to them to determine whether the danger was increased, that, in the event they so found, it was their duty, in determining whether reasonable or ordinary care had been exercised, to consider the increased danger of fire, yet we cannot say that this was the fair meaning of the words in which said instruction was couched.

There has been much discussion in the books concerning the correctness of the old doctrine as to degrees of negligence. *New York Cent. R. Co.* v. *Lockwood* (1873), 17 Wall. 357, 21 L. Ed. 627; *Steamboat New World* v. *King* (1853), 16 How. 469, 14 L. Ed. 1019; *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 17 Am. Rep. 719; *Pennsylvania Co.* v. *Sinclair* (1878), 62 Ind. 301, 30 Am. Rep. 185; Wharton, Negligence (2d ed.), §44; 6 Albany L. J. 313; 2 Ames & Smith, Cases on Torts, 143; 21 Am. and Eng. Ency. Law (2d ed.), 459, and cases cited. While we apprehend that the adverse opinions which have been expressed concerning such doctrine were not intended to be understood as militating against the view that the legal standard of care is not the same in all relations, or to discountenance the practice of charging the jury in terms that indicate the extent of care required, as great, ordinary, or slight (1 Shearman & Redfield, Negligence [5th ed.], §47), yet the point which we wish to enforce now is that in all cases negligence consists simply in a failure to measure up to the legal standard of care. It was said by Welles, J., in *Grill* v. *General Iron Screw, etc., Co.* (1866), L. R. 1 C. P. 600, 611: "Confusion has arisen from regarding negligence as a positive instead of a negative word. It is really the absence of such care as it was the duty of the defendant to use."

Here we admittedly have a case in which it was the duty of the company to exercise ordinary care, but what does an instruction mean that informs the jury that in certain circumstances a greater degree of care is required, when it has for a background an instruction, which is applicable to all circumstances, that all reasonable precaution must be used? We think that in such a case the jury would

7. understand that more than ordinary care was required, and it is not improbable that the effect of giving such an instruction, following an instruction like five, would be to lead the jury to infer that the defendant's duty was raised by the circumstances recited to a pitch of intensity that could not reasonably have been attained.

It was said by this court in *Meredith* v. *Reed* (1866), 26 Ind. 334, 336: "What is ordinary care in some cases, would be carelessness in others. The law regards the circumstances surrounding each case, and the nature of the animal or machinery under control. Greater care is required to be taken of a stallion than of a mare; so in the management of a steam engine, greater care is necessary than in the use of a plow. Yet it is all ordinary care." The legal standard of care required in a particular relationship is always the same, although the amount of care thus required depends upon the particular circumstances. *Cleveland, etc., R. Co.* v. *Terry* (1858), 8 Ohio St. 570; *Weiser* v. *Broadway, etc., St. R. Co.* (1895), 6 Ohio Dec. 215. As has been observed by a modern writer: "This standard may vary in fact, but not in law." 2 Jaggard, Torts, p. 819. In an article in 3 Albany L. J. 314, it is said: "The ratio, proportion or correspondence of diligence to circumstances, of care to surroundings, is fixed and identical. And, in determining a question of diligence or negligence in either case [as between two cases previously used by way of illustration], it would be only necessary to apply the same rule to varying circumstances and persons, to demand the same ratio between varying extremes. And it is not too much to assert that all the perplexity and mis-

understanding on the subject of diligence and negligence are due to the habit of confounding the specific acts and circumstances, which must always vary, with the ratio or relation between them, which remains always the same."

In 13 Am. and Eng. Ency. Law (2d ed.), 416, it is said: "The very statement of the general rule that reasonable care is required to prevent injuries to others from fire, implies that what is reasonable care must depend upon the circumstances of each particular case. It is, however, inaccurate to say, as many of the cases do, that the degree of care varies with the particular circumstances. It is only reasonable care that is required in any case; but the greater the danger, or the more likely the communication of fire and the ignition of the property of others, the more precautions and the closer vigilance reasonable care requires." As above suggested, cases can be found in which it is stated that the degree of care to be used depends upon the danger, but, as has been observed by this court, it is not every statement of the law as found in an opinion or text-book, however well and accurately put, which can properly be embodied in an instruction. *Garfield* v. *State* (1881), 74 Ind. 60. The viciousness of the instruction in question lies in its tendency to lead the jury to infer that the legal standard of ordinary care was raised by the circumstances recited, thus making possible the inference that a great but undefined extent of care was required, whereas all that the law exacted was the ordinary care which the situation demanded, or such care as it is to be assumed that an ordinarily prudent man would exercise in the circumstances, were the risk his own.

In this case the acts and omissions which the complaint charged as negligent were various, so that the question of what was ordinary care arose in a number of ways, and we can only conclude, in view of the misleading character of the instruction under consideration, that prejudicial error has intervened.

Judgment reversed, and a new trial ordered.