CHICAGO AND ERIE RAILROAD COMPANY v. FRETZ.

[No. 21,330. Filed December 15, 1909. Rehearing denied February 24, 1910.]

1. PLEADING.— Complaint.— Railroads.— Highway Crossings.— A complaint alleging that the public highway between two points crosses a railroad, that the plaintiff undertook to travel over such road at night, that she "was compelled to cross the railroad," that she had no knowledge whatever of such railroad at the point of crossing, that she was proceeding carefully and that defendant negligently ran its train noiselessly without warning and

without giving the statutory signals, upon and over the crossing, thereby injuring her, does not show that the plaintiff knew of the crossing. p. 523.

2. RAILROADS.—*Highway Crossings.—Contributory Negligence.*—It is not negligence, as a matter of law, for a traveler, on a dark, rainy night, knowingly to drive upon a railroad crossing, with his buggy covered. pp. 524, 527.

3. RAILROADS.—*Failure to Give Statutory Signals.—Negligence.*— The failure of a railroad company to give the statutory signals constitutes negligence *per se.* p. 524.

4. TRIAL.— *Due Care.— Jury.— Railroads.— Highway Crossings.*— Whether a traveler used due care in approaching a railroad crossing on a dark, rainy night in a covered buggy, is a question for the jury. pp. 525, 526.

5. RAILROADS.—*Highway Crossings.—Ignorance of.—Look and Listen.*—A traveler approaching a railroad crossing, on a dark night, and knowing nothing of such crossing, is not required to look and listen. pp. 525, 526, 527, 530, 532.

6. TRIAL.—*Burden of Proof.—Contributory Negligence.—Railroad Crossings.—Travelers.*—The burden of proving that a traveler injured upon a railroad crossing was guilty of contributory negligence, is upon the defendant. p. 525.

7. RAILROADS.—*Highway Crossings.—Failure to Give Signals.— Proximate Cause.—Jury.*—Whether the failure of a railroad company to give the statutory signals at a highway crossing, was the proximate cause of an injury to a traveler upon such crossing, is a question for the jury. p. 525.

8. TRIAL.—*Questions for Jury.*—Questions of fact, and of mixed law and fact, are for the jury. p. 526.

9. PLEADING.—*Complaint.—Railroads.—Failure of Traveler to Look and Listen.*—A complaint for injuries to a traveler upon a railroad crossing need not allege that such traveler stopped, looked and listened, such failure constituting matter for the defense of contributory negligence. p. 527.

10. APPEAL.—*Interrogatories.—Judgment.*—On a motion for judgment upon the answers to interrogatories, the Supreme Court will consider only the complaint, answer, general verdict and such interrogatories and answers. p. 528.

11. TRIAL.— *Interrogatories.— Railroads.— Highway Crossings.*— Answers to interrogatories to the jury showing that the plaintiff approached a railroad crossing at night in the rain, that the buggy was covered, that the train gave no signal, that plaintiff's horse became frightened and went upon the track, the plaintiff being injured, do not overturn a verdict for the plaintiff, where the complaint alleged that the plaintiff was ignorant of the crossing. pp. 528, 531.

12. TRIAL.— *Instructions.— Misleading.— Damages.— Personal Injuries.—Railroads.*—An instruction that in estimating damages the jury should consider the peril to plaintiff's life is misleading, where the evidence showed that the plaintiff was struck, without warning, and carried 800 feet upon the pilot of the locomotive engine, although other instructions correctly informed the jury as to the measure of damages.  p. 532.

13. TRIAL.—*Instructions.—Erroneous.—Curing.*—The giving of an erroneous instruction cannot be cured by the giving of others which are correct.  p. 534.

14. TRIAL.— *Instructions. — Damages.— Considering All Circumstances.*—An instruction that the jury, if it should find for the plaintiff, should "determine the amount which * * * she should receive," and that the amount should be such sum as the jury should deem a fair and just compensation for her injuries "taking into consideration the circumstances surrounding the plaintiff," not exceeding the demand, is erroneous, and is not cured by other and correct instructions.  p. 534.

From Marshall Circuit Court; *Harry Bernetha,* Judge.

Action by Bessie H. Fretz against the Chicago and Erie Railroad Company. From a judgment on a verdict for plaintiff for $7,500, defendant appeals. *Reversed.*

*W. O. Johnson, U. Z. Wiley, A. H. Jones, Holman & Stephenson* and *George C. Gale,* for appellant.

*Montgomery & Emmons, S. N. Stevens* and *Arthur Metzler,* for appellee.

MYERS, J.—Action by appellee for damages caused by being struck by one of appellant's trains at a highway crossing. The action was begun in Fulton county, and the venue was changed to the Marshall Circuit Court, where there was a trial, and judgment for appellee.

The complaint was in three paragraphs. The third was withdrawn by an instruction of the court, and errors are assigned on the ruling on the demurrers to the first and second paragraphs, on the overruling of the motions for judgment on the interrogatories and answers notwithstanding the general verdict, for a new trial, and in arrest of judgment.

The second paragraph of complaint, after the formal parts, alleges that appellant's road extends in a northwesterly direction through Fulton county, and crosses a public highway leading from Leiters Ford to Rochester, in Fulton county, running in a southeasterly direction, and that in traveling from Leiters Ford to Rochester on such highway appellee was compelled to cross the railroad at a point where the highway at and near the railway was about sixty feet wide and the traveled track thereof ten feet wide; that about 10 o'clock on the night of April 14, 1906, appellee, in company with Ray Fretz, was driving a horse and buggy on such highway from Leiters Ford to Rochester; that Ray Fretz had never traveled upon said highway, and neither he nor appellee had any knowledge whatever of the location of such railroad at the point where it is crossed by the highway; that the night was dark and it was raining; that to prevent getting wet, appellee was compelled to, and did have the top of the buggy up and the side curtains on; that neither of them had any knowledge of the approach of any train, and there was no light at or near the crossing to reveal its location; that they were driving cautiously, slowly and carefully along said highway, and neither of them was familiar with the location of the crossing, nor did they know that the crossing was there, nor were they familiar with the time of the running of trains on said railroad; that as appellee's horse approached the track, and just as Ray Fretz and appellee were about to drive the horse on the track, defendant carelessly and negligently ran a through freight-train from the west over the crossing at the dangerous and reckless speed of forty miles per hour; that the steam was wholly shut off; that defendant negligently and carelessly failed to sound the whistle within eighty rods of the crossing or ring the bell, or to give any sound or signal of the approach of the train to the crossing; that, as the train approached the crossing, Ray Fretz quickly attempted to stop the horse, leaped from the buggy, and grabbed the horse by

the rein; that, by reason of the careless approach of the train, the horse became unmanageable and intractable, and plunged upon the track, tearing away from the hold of Ray Fretz; that, owing to the negligent and reckless rate of speed of the train, he was unable to get the horse and buggy out of the reach of the train and locomotive, but said engine ran upon and against the horse, buggy and appellee, the pilot struck the horse, buggy and appellee with great force and violence, and thereby jarred and jolted and carried appellee about one-fourth of a mile, and threw her from the locomotive to the side of the track, whereby she was greatly injured, her injuries being set out specifically; that if the whistle had been sounded or the bell rung in approaching the crossing both she and Ray Fretz could and would have heard the signal, and the accident could and would have been avoided; that at and prior to the time of the injury she was free from pain, and in almost perfect health; that her injuries were occasioned solely by said negligence of defendant.

The first paragraph is the same as the second, except that the former omits the allegations that appellee was in almost perfect health, and avers that defendant, in the operation and management of the train, carelessly and negligently failed to sound the whistle or ring the bell, or give any signal of the approach of the train to the crossing; that by reason of the shutting off of the steam, and the rapid speed of the train, it made no noise that could be heard for any distance, and no noise was heard by the parties in the buggy.

Appellant assails the complaint principally upon the ground that it appears from the complaint that appellee knew that she had to cross the railroad in traveling upon the highway, and that as she knew that fact, and as the night was dark, and it was raining, and the side curtains were on the buggy, she was chargeable with greater diligence, and that the complaint on its face discloses contributory negligence. The contention is based principally upon the allegation that, in traveling upon the highway from

Leiters Ford to Rochester, appellee was ''compelled to cross the railroad,'' and that she could not be said to be ignorant of a condition which that allegation discloses she knew was to be encountered. We do not so interpret the allegation. It is an averment after the occurrence of the accident, of the fact that in traveling upon such highway the railroad had to be crossed, by reason of the highway's crossing it. It is the averment of an after-discovered condition necessarily encountered in traveling on that highway, but not an averment that she had notice before that time that it did cross the railway; and it is specifically averred that neither of them had any knowledge that there was a crossing at that point, and each was unfamiliar with the location of the crossing, the location of the railroad at the crossing, and the time of running trains, and had no knowledge of the approach of any train; that the night was dark, and there was no light to reveal the existence of the crossing. We do not think the objection to the complaint is well taken on that point. Even if appellee knew there was a crossing of the railway to be encountered, she was not thereby precluded from traveling upon the highway, and it was not in itself negligence for her to do so, even on a dark and rainy night, or to do so with the side curtains on the buggy. The use of the highway and the crossing by appellee and the railroad was a reciprocal use, with the precedence in crossing with the railroad train, in which certain duties were imposed by statute upon the railroad's servants, and certain duties upon appellee by the commonly recognized law.

She alleges that by reason of the rapid approach of the train without signal, and the want of knowledge of the existence of the crossing, the horse was driven so close to the track that, upon the approach of the rapidly-moving train, the horse became unmanageable and plunged upon the track. The omission of the statutory duty of the defendant's servants to give the signals required by statute, is in and of itself negligence. She alleges her injury

to have occurred from this failure to give the statutory signal, or any signal, setting out the conditions under which she approached the crossing and was injured. While it is true, as a matter of law, that in traveling upon an unknown way on a dark and rainy night, and in an enclosed vehicle, 4. more diligence and care is required than in an open vehicle in broad daylight, yet appellee had a right to travel that way, and whether she used care or caution or vigilance commensurate with the dangers reasonably likely to be encountered was a question for the jury under all the facts and circumstances bearing upon that question.

5. But the rule of look and listen, and of increased vigilance from present peril, is taken out of the case by the allegations of ignorance as to the existence of the crossing, lack of anything to reveal its presence, or anything to call attention to any occasion specially for looking or listening, or anything to indicate the presence of danger, unless we can say that one without any knowledge of the existence of a railway crossing which is not apparent and there is nothing to indicate its presence, or the presence of danger, is guilty of contributory negligence under any and all circumstances, simply because he does not see or hear when there is nothing to invite hearing or seeing, nor anything to warn him of danger. It must be apparent that such rule would in most cases result in making a *prima facie* case of contribu- 6. tory negligence of the injured party, from the mere fact of injury, and place upon such party the burden of establishing the want of contributory negligence, when the statutory rule is just the reverse. Whether the running of the train as charged, and the failure to give the sig- 7. nals, were the primary causes of the injury, and whether under all the circumstances appellee was guilty of contributory negligence in not seeing or hearing the approaching train which she alleges gave no signal, and which she alleges she neither saw nor heard in time to prevent the horse's becoming unmanageable, and plunging on

the track, were questions for the jury to determine under proper instructions. *Lake Erie, etc., R. Co.* v. *Ford* (1906), 167 Ind. 205; *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219.

What would be ordinary care in approaching an unknown place of danger such as a railroad crossing, with nothing to disclose its presence, and the inability, from darkness, to see it, would be an entirely different thing from approaching a known or visible crossing; but to invoke the rule as appellant seeks to apply it would require the same application in one case as in the other, while it is quite certain that there is a marked difference in the rule of look and listen, and due or ordinary care, in the two instances. The look and listen rule is uniformly held not to apply when the conditions for seeing or hearing are such that they would be unavailing, or when some act of the company has been misleading. The rule is not applicable when there is nothing to indicate the requirement, either from physical conditions rendering it difficult—as darkness, rain, intervening objects, and the like, or a train's running with the steam cut off and coming noiselessly at the rate of thirty or thirty-five miles per hour toward one who is ignorant of the presence of a crossing, with nothing to direct his attention to it. The question then becomes one of ordinary or due care, under all the circumstances, under the rule that where one impartial sensible man might draw the inference of contributory negligence, another equally impartial and sensible man might draw the opposite inference, the question becoming one for a jury. An instructive case is *Malott* v. *Hawkins* (1902), 159 Ind. 127.

When the question of negligence is one of fact, or one of mixed law and fact, it is a matter for the jury. *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435. Negligence imports the absence of the degree of care which it is the duty of one to use under the circumstances surrounding him, or in relation to the subject-matter before

him, with the knowledge he has, or could reasonably obtain. *Lake Erie, etc., R. Co.* v. *Ford, supra.*

It must be obvious that a person who is in a place where he has a right to be, and in a position in which he has no knowledge of a danger, and there is nothing to convey to him, by the use of his senses, the knowledge of said danger, is in a very different situation from one who is where he has a right to be, but has knowledge of the conditions, and where the use of his senses would disclose danger. Knowledge or the means of knowledge must precede action and indicate duty, or disclose the conditions demanding ordinary or increased care, as the case may be, for care must be in proportion to the hazard or increase of danger, and if the lack of opportunity to discover it is absent, the occasion for the exercise of more than the care of an ordinarily prudent person is wanting. The complaint is not bad for failing to aver that appellee stopped, and looked and listened, for if it was contributory negligence for her so to fail, if she did, it was a matter of defense. Prior to the enactment of 1899 (Acts 1899, p. 58, §362 Burns 1908) the complaint, to be good, had to disclose on its face, by direct averment or by facts disclosing it, that the injured party was free from negligence contributing to the injury, but that burden is entirely reversed by the foregoing statute.

It is averred that because of the allegations that the night was dark, that it was raining, that the buggy top was up and the side curtains were on, so that seeing was obstructed, there was the duty of increased vigilance. As an abstract legal proposition that is true. Ordinary care and increased vigilance are relative terms, depending upon many things, and differing greatly in specific cases. If appellee had known of the proximity of the crossing, or of the fact that the railway would have to be crossed in traveling upon that highway, so as to invoke increased vigilance, a different question would be presented. But she had a right to travel upon that highway, on a night when it was raining

and dark, and to protect herself from the inclemency of the weather by the use of a top buggy, with the side curtains on. The necessity for increased vigilance depended upon knowledge, or the means of knowledge to invoke its exercise. We cannot say, under these circumstances, from the facts disclosed, as a matter of law, that she was guilty of contributory negligence. We do not think the complaint is open to any of the objections urged against it.

Appellant insists upon its motion for a judgment upon the interrogatories and answers, disclosing that the sight of the train was obstructed to the view of persons, looking carefully, by the top of the buggy and the darkness; that hearing the train was prevented to one listening attentively, by the noise of the buggy, the falling of rain on the top of the buggy, and the wind blowing from the southeast, and that appellee could not have heard the train in time to avoid the injury by looking carefully, or listening attentively, by reason of the train's being so near as to give her no time.

In reviewing this question we look only to the complaint, answer, general verdict and the interrogatories and answers. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297; *Cox* v. *Ratcliffe* (1886), 105 Ind. 374.

Another interrogatory and answer discloses that the angle of the railway track was about forty-five degrees at the point of crossing. Others, that the country was comparatively level, that appellee's companion was driving the horse, and was from ten to fourteen feet from the track when the approach of the train was discovered, about 10 o'clock at night; that it was dark and misting; that the headlight was burning; that the train was running thirty-five miles an hour; that as they approached the crossing the horse became frightened, and the driver jumped out of the buggy onto the horse's back; that the bell on the engine was not rung, nor the whistle blown; that at and prior to the time the horse took fright, appellee and the driver were in possession of their ordinary faculties.

Two of the interrogatories address the inquiry regarding seeing and hearing to one "traveling along the highway as was the plaintiff," and the answers plainly indicate that the jury understood the inquiry "traveling along the highway as was the plaintiff" to mean, the conditions under which she was traveling, that is, in an enclosed vehicle, on a dark night, and in a misting rain. We cannot know how near to a known railroad crossing one may approach and still be assured that a horse may not become frightened and unmanageable, and where there is coupled with such answer the allegation of a complaint that the presence of the crossing was unknown, that no signal was given to warn travelers, traveling as they had a right to do, until a train was practically upon them, we must assume that there was evidence showing that there was no occasion for the vigilance which might otherwise be required, and that they were not necessarily negligent in failing to see or hear, by reason of the conditions surrounding them, until they were so near the crossing that the horse became unmanageable, and they were helpless to prevent his plunging onto the track, as is alleged in the complaint. The complaint, general verdict and answers to the interrogatories disclose such a condition of affairs as to show the proximate cause of the injury to be the failure to give the statutory signals, and the accident such as would be the natural result from that breach of duty. We cannot say that such care was not exercised as an ordinarily prudent person, unaware of the existence of the crossing, would exercise under like circumstances. In the case of *Pennsylvania Co.* v. *Fertig* (1905), 34 Ind. App. 459, a verdict was not disturbed where the plaintiff was injured by his horse's being frightened, and throwing him out of a buggy, where it appeared that he stopped, and looked and listened at a point 100 feet south of the track, when his view was obstructed, and that at a point 43 feet south of the track, and within the right of way, he could have seen a train approaching at a

distance of 1,500 feet, and at an intermediate point between these latter two could have seen as far as the sight would carry. In the case of *Lowden* v. *Pennsylvania Co.* (1908), 41 Ind. App. 614, where a person was at a known crossing, both of a railway and a street railway, where there were obstructions, but where there was an opportunity to see, but the opportunity for hearing was affected by other noises, the direction of the wind, and the moving train, until there was less than two seconds from the time she saw it until she was struck, and when she could, if given time, have stood between the tracks without injury—a new trial was granted to her. It is shown that the obstruction to sight was the enclosed vehicle, and the obstruction to hearing the alleged fact that the steam was shut off, the train running without making a noise, the wind blowing in the opposite direction from the moving train, and rain falling on the top of the buggy. It is urged that the failure to stop and look and listen and to see the headlight or to hear the coming train arose from plaintiff's voluntarily enclosing the buggy, and constitutes contributory negligence. There can be no requirement to stop, and look and listen, when there is no knowledge of the existence, and nothing to indicate the presence, of a railway crossing to call for such action. The mist we must recognize as in some degree arresting the rays of light, and the wind, retarding in some degree the sound of the coming train; the train approaching the crossing at an angle of forty-five degrees, possibly conveyed less sound to appellee near the crossing, than if the crossing were at right angles, or, if appellee were farther from the crossing. All are factors. The question of negligence, or no negligence, depending upon the degrees of capability or opportunity for seeing or hearing the train, was one for the jury. The complaint alleges that appellee was driving "cautiously, slowly and carefully" along the highway. The jury find that the train was running thirty-five miles an hour, or one

mile in one minute and fifty seconds, or forty-eight feet a
second, so that taking this alleged fact and the finding to-
gether, it will be seen that, appellee moving slowly, and ap-
pellant's train so rapidly, the train would traverse an im-
mensely greater distance than appellee in the same space of
time, and while she was near the crossing. The law does not
undertake to define the distance from a known crossing at
which a traveler must look or listen, the test being, Did the
traveler exercise ordinary care, in view of the danger, in se-
lecting the place? *Malott* v. *Hawkins* (1902), 159 Ind. 127;
*Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426.

If the presence of the crossing is unknown, and there is
nothing to indicate its presence, and it cannot be seen, there
can be no reason for the rule of look and listen, beyond the
rule of ordinary care, and no such obligation rests upon one
thus ignorant as upon one who does know of, or can see its
existence. The reason for the rule fails. It is not like a
case where the presence of the crossing is known or visible,
and the view is obstructed, or where the injured party vol-
untarily places himself in a situation or condition to obstruct
seeing or hearing, or where he fails to listen when he cannot
see, or to stop, when he cannot see or hear without stopping.
The rule of look and listen is not unbending, but is to be
applied to the conditions which call for its application.
The conditions must be such as to suggest to one of
common understanding that there is a crossing, and conse-
quently danger to be apprehended. Ordinary care in view of
all the circumstances is the rule of conduct. It cannot be
said, as a matter of law, that the voluntary obstruction to
hearing or seeing, under the facts disclosed by the
11. interrogatories, coupled with the evidence admissible
under the complaint, and the failure to see or hear
the train, presents a case of contributory negligence, as a
matter of law, or that the interrogatories and answers are
in irreconcilable conflict with the general verdict, for it can-

not be said, as a matter of law, that they are inconsistent with the care prudent persons of ordinary intelligence would exercise under like circumstances. *Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind. 380.

5. Appellee's omission to stop, or look or listen for a train was not fatal to her right of recovery. *Ohio, etc., R. Co.* v. *Stansberry* (1892), 132 Ind. 533.

In *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind. 522, it is said, with respect to a traveler approaching a known crossing: "The omission [of the statutory signals] is calculated to mislead the traveler, and to assure him that the coming of the train is not imminent." Much more must this be so where the presence of the crossing is unknown. A traveler on a highway has a right to rely upon the giving of the signals. The statute is enacted for a purpose, and that purpose is to give notice, and especially must that be true where there is no other notice of the crossing.

Complaint is made of instructions nineteen and twenty, which are as follows: "(19) I instruct you that in your determination of the damages in this case, you may

12. take into account the peril of plaintiff's life, if you find there was such peril at the time of the accident, as an element of such damages as you may find in favor of the plaintiff, if you find for the plaintiff. (20) If, under the evidence and the instructions given by the court, * * * you find the plaintiff will be entitled to recover, it will be your duty to determine the amount which, in your judgment, she should receive. This will be such sum as you deem a fair and just compensation for her injuries, if any are shown, taking into consideration the circumstances surrounding the plaintiff, and the amount is to be determined by you in the exercise of a sound discretion, but in no event can it exceed the sum of $15,000."

It is objected to instruction nineteen, that peril of life, mere fright is not an element of damages, when unaccompanied by physical injury. Whether peril of life without

physical injury, but from which injurious physical or mental results flow proximately, reasonably and naturally, is a proper element of damages, but need not be determined in this case, for such claim is not pleaded nor made.

The evidence in the case shows that appellee was struck almost simultaneously upon the discovery of the train, and was unconscious from that moment, and was carried on the pilot of the engine about eight hundred feet before she was thrown off. Upon the authority of the cases of *Terre Haute, etc., R. Co.* v. *Brunker* (1891), 128 Ind. 542, and *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576, this instruction is sought to be upheld in connection with instructions eight, fourteen, fifteen and twenty. After instructing as to the duties of a traveler upon a highway who does not know of the location of the crossing, instruction eight concludes: "Then the plaintiff should recover such damages as she has proven, if any, as the result of the injury." Instructions fourteen and fifteen are as follows:

"(14) Should you find for the plaintiff in this cause you should not assess vindictive, punitive or exemplary damages. If you find for the plaintiff, you should only assess such damages as will fairly compensate her for any damages sustained by her, if any is shown, caused by the injury, which would include pain and mental suffering, if any, as well as loss of time; she could not recover for medical attention, care and nursing subsequent to her marriage to Ray Fretz. (15) Should you find for the plaintiff, before you would be justified in the assessment of damages for future or permanent disability, it must appear that continued or permanent disability is reasonably certain to result from the injury complained of; that an injury may possibly result in permanent disability, will not warrant the assessment of damages for a possible disability, unless the evidence shows it to be reasonably certain to follow."

We are not able to perceive that instruction fifteen throws any light upon instruction nineteen, and the question is, Co.

sidering instructions eight, fourteen and twenty, in connec-
tion with instruction nineteen, is the latter calculated to
mislead the jury, or advise them that peril of life is an ele-
ment of damages, or do the other instructions limit damages
to those arising from the physical injury? Instruction eight
is general, and clearly refers to damages as the result of the
physical injury. Instruction fourteen likewise refers to dam-
ages arising from the injury from the physical impact. The
statements in instructions fourteen and twenty, limiting the
recovery to damages "caused by the injury" and "just com-
pensation for her injuries," would cover all injuries which
are proper elements of damages. But the difficulty with in-
struction nineteen is twofold; there is no evidence to which
it could apply, and it is therefore misleading, for appellee's
own statement is, that she was struck simultaneously with
the discovery of the train, and rendered unconscious, so that
there could be no element of damages arising from mere peril
of life, or fright, if admissible, except perhaps the instan-
taneous shock, but under it all lies the proposition that dam-
ages from peril of life are not pleaded or claimed, and the
jury was instructed that peril of life is an element of dam-
ages in the case, without reference to anything else. The
error is not cured by instructions which tell the jury
that they can only assess damages caused by the in-
jury, because injury from peril of life is included.
The two instructions could have no other effect than to mis-
lead the jury. Only the withdrawal of instruction nineteen
would cure the error. *Weston* v. *State* (1906), 167 Ind. 324;
*Chicago, etc., R. Co.* v. *Glover* (1900), 154 Ind. 584; *Hauger*
v. *Benua* (1899), 153 Ind. 642; *Wenning* v. *Teeple* (1896),
144 Ind. 189.

Instruction twenty is too broad. Parties have the right
to have damages assessed under the rules of law, and to have
juries instructed as to the rules for their ascertain-
ment, and not upon "taking into consideration the
circumstances surrounding the plaintiff." What are

we or a jury to understand from "taking into consideration the circumstances surrounding the plaintiff?" What circumstances? Circumstances of need, or of plenty? If the former, so much the greater should be the assessment than in case of the latter, and *vice versa*. The assessment must be made upon the evidence on the subject of damages, but the instruction ignores that requirement, and disregards the rules of law, which are uniform upon the elements of damages in every case, and leaves the matter almost wholly to the undirected notions of the jury.

Neither is instruction twenty cured by any other instruction, for, taken in connection with others, it is entirely misleading.

For the error in giving instructions nineteen and twenty the judgment must be reversed and a new trial directed, and it is so ordered.