JOHNSON, Appellant, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, et al, Respondent

(22 N. W.2d 725.)

(File No. 8803. Opinion Filed May 6, 1946.)
Rehearing Denied June 8, 1946.

134

Louis H. Smith, of Sioux Falls, for Appellant.
Churchill & Churchill, of Huron, for Respondents.

BECK, Circuit Judge. This appeal involves a railway crossing accident which occurred near the town of Unityville, in McCook County, on August 1, 1941; and which accident resulted in the death of Dean Johnson, a young man, 21 years of age. The action was brought by plaintiff, in her capacity as administratrix of the estate of said deceased. Appellant claims substantial damages occasioned by the death of the said Dean Johnson; and bases her claim upon alleged negligence on the part of the respondent railway company.

At the close of all the evidence and after both sides had rested, the trial court directed a verdict in favor of the respondents. Such ruling is grounded upon the theory that the said deceased was, as a matter of law, guilty of contributory negligence which barred any recovery. Judgment was entered accordingly. The appellant has appealed from such judgment and assigns but two alleged errors:

1. That the trial court erred in sustaining the motion for a directed verdict.

2. The court erred in entering judgment for defendants. The record discloses a decided conflict in the evidence. We are, however, concerned with a motion for a directed verdict made after both sides had presented their evidence. This court in dealing with a motion for a directed verdict made by defendant at the close of plaintiff's evidence and renewed after both sides had rested, in the case of Clinkscales v. Wisconsin Granite Co., 38 S. D. 205, 160 N. W. 843, 845, stated the rule to be applied as follows: "The rule has been long settled in this state, in accordance with that existing in many other states, that on a motion for a directed verdict by either plaintiff or defendant, the trial court and this court will assume that the evidence of the party against whom a verdict is demanded is undisputed, and will also give such evidence that construction which is most favorable to such party. Thus on a motion of the defendant for a directed verdict the court will assume the evidence of the plaintiff to be undisputed, and give it the most favorable construction for the plaintiff that it will properly bear, and give the plaintiff the benefit of all reasonable inferences arising therefrom."

■ The above is supported by the following cases: Forbes State Bank v. Higgins et al., 58 S. D. 497, 237 N .W. 735; Woonsocket State Bank v. Parsons, 52 S. D. 534, 219 N. W. 121, Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; Bohl v. City of Dell Rapids, 15 S. D. 619, 91 N. W. 315; Merchants' Nat. Bank v. Stebbins et al., 15 S. D. 280, 89 N. W. 674; Marshall v. Harney Peak Tin Mining, Milling & Mfg. Co., 1 S. D. 350, 47 N. W. 290. In the case of Commercial & Savings Bank v. Duitsman, 48 S. D. 534, 205 N. W.

379, Judge Sherwood quotes the above rule but states that the rule as stated in Peet v. Dakota Fire & Marine Ins. Co., 1 S. D. 462, 47 N. W. 532, 533, is to be preferred. Such rule is as follows: "The test of the right to direct a verdict is whether the court would be bound to set a verdict aside as against the evidence, if rendered against the party in whose favor it was directed."

This latter statement of the rule has been approved in the late cases of Federal Land Bank of Omaha v. Houck, 68 S. D. 449, 4 N. W.2d 213 and McCormick v. Rapid City Nat. Bank, 67 S. D. 444, 293 N. W. 819.

■ We believe there is no conflict in the rules above stated: That this court has consistently held that, upon a motion for a directed verdict, the court will assume the evidence of the party against whom such verdict is demanded to be true, and that such party is entitled to the benefit of all legitimate inferences, in his favor, arising therefrom. That the difference is in the choice of language rather than in the application of legal principles.

The facts as established by appellant's evidence, together with such reasonable inferences as may arise therefrom, are substantially as follows:

The respondents, at all times material to this case, operated a line of railroad across McCook County, and through the town of Unityville, in said county. About 80 rods north of its depot, in the said town of Unityville, a gravelled county highway running east and west crosses the respondents' railway track by means of a grade crossing. At this point, the railway track runs approximately north and south angling slightly from the northwest to the southeast. On the morning of August 1st, 1941, about 10 o'clock a. m., Dean Johnson, a young man twenty-one years of age, in good health, and who had theretofore completed a high school course, had received three years of normal training, and who had driven automobiles since he was fourteen years of age, proceeded to drive a Model A Ford automobile, equipped with mechanical brakes in good working order, in a westerly course along said highway to the point where the highway crosses the railway track, at

which point his automobile was struck by an on-coming passenger train and he was killed. That said automobile was driven at a speed of from 15 to 20 miles an hour as it approached the railway crossing. The day was bright and clear. To the north of the highway, for a distance of about 80 rods, was a field of DeKalb hybrid corn, from six to eight feet tall, that obstructed the view of the driver of the car, to his right. This field of corn extended to the fence along the right of way of the respondent railway company. At the fence corner and upon the right of way there was growing sweet clover and sunflowers that further obstructed the view of the driver of the car. Two witnesses for appellant testified that a person approaching from the east, at the time of the accident, did not have a clear view of the track to the north until within 20 or 25 feet of the crossing. A third witness fixed the distance at from 35 to 40 feet. These witnesses resided in the immediate vicinity of the crossing and were familiar with the existing conditions, as to visibility, on August 1, 1941.

The highway, at a point 300 feet east of the crossing, was about 3½ feet lower than at the crossing. There was a slight upgrade along the highway as it approached the railway track from the east; and there was a slight bulge in the road immediately east of the crossing. The highway to the west of the crossing and near the crossing dropped about a foot and then proceeded along a level course westward. The cornfield to the north of the highway, as it neared the crossing, was a foot higher than the highway. About 300 feet east of the crossing, there was a slough or low place in the cornfield and the corn was not as high there as further west.

The railway company maintained a cross-arm, or cross-buck, warning sign to the west of the railway track and on the south side of the highway. This sign was about 10 feet high and was visible to one looking to the left when approaching the crossing from the east. There was no warning sign on the north side of the highway, except a small standard county warning sign maintained by the county at a point about 300 feet east of the crossing. This sign was leaning slightly

to the north, and was somewhat obscured by growing weeds. It could not be readily seen.

The deceased had a clear view to the south or to his left, as he approached the crossing. A grain elevator, located about 60 rods south of the highway, could be seen, a switch stand some distance south of the crossing was visible, the railway warning sign to the west of the railway track was also visible, and the railroad track could be seen to the south of the crossing. The photographs offered in evidence show that the crossing was planked. There was a bulge in the road about 20 or 25 feet east of the crossing; the highway from the east, as it neared the track, followed a slight upgrade. It may be inferred that a driver approaching the crossing from the east and looking forward along the course of the highway, or to the right, did not have a clear view of the crossing, until very near it.

At a point about 30 feet east of the crossing, there was a trail, or undeveloped country road, leading south from the highway to a grain elevator. This road was used occasionally by farmers having occasion to visit this elevator. It was visible to a driver approaching the crossing from the east, if he looked to his left as he approached the crossing.

The bell on the locomotive was not rung nor was the whistle blown within 80 rods of the crossing, as required by statute, although the whistle was sounded at a crossing about a mile north of the point where the accident occurred.

Dean, Johnson, the driver of the car, had never driven over this highway before, and was not familiar with the railway crossing where the accident occurred nor the location of the respondents' railway tracks, in the vicinity of the crossing in question.

Certain photographs, marked as exhibits, were received in evidence. These photographs were taken shortly after the accident in question occurred. Exhibit No. 20 was taken with the camera in the center of the highway facing west at a point 400 feet east of the center of the railroad crossing; and Exhibit No. 2 was taken with the camera in

the center of the highway facing west, at a point 205 feet east of the center of the crossing. These exhibits tend to corroborate the testimony of plaintiff's witnesses to the effect that the view to the north was obstructed, and that the crossing was not plainly visible to a driver approaching from the east. Exhibit No. 15 was taken with the camera in the center of the highway facing west, at a point 75 feet east of the center of the crossing. This exhibit shows clearly the railroad crossing, the railroad track across the highway and the telegraph line along the track.

Exhibit No. 1 was taken with the camera in the center of the railroad track facing south, at a point 47 feet and 9 inches north of the center of the crossing. This exhibit plainly shows the crossing, the railway tracks, and the elevator to the south of the crossing. It, of course, was taken along the course of the railroad track. Exhibit No. 19 was taken with the camera in the center of the railroad track facing north, at a point 41 feet and 8 inches south of the center of the crossing. This exhibit too shows plainly the crossing, the railway track to the north and the telephone line. This photograph was also taken along the course of the railroad track with the camera very near the crossing. Exhibit No. 21 shows a train approaching the railroad crossing from the north. It is partially visible above the cornfield. This photograph was taken with the camera in the center of the highway facing northwest, at a point 300 feet east of the center of the crossing.

There is some conflict in the evidence as to the positions in which the camera was placed when these various photographs were taken. There are inferences arising from the physical conditions reflected by the photographs that tend to contradict the oral testimony of appellant's witnesses. We believe, however, that under the record before us, it was for the jury to determine whether or not the photographs accurately reflect the physical conditions, as they existed, at the time and place of the accident.

Photographs taken at, or about the time of an accident, are admissible in evidence; and it is usually held

that such photographs are received in explanation of the facts and circumstances developed upon the trial. Note 55 A. L. R. 1343. We do not think that the photographs are conclusive in this case.

The respondents contend that the decedent was guilty of contributory negligence in failing to maintain a proper lookout for approaching trains as he approached the crossing; and in attempting to cross the railway track in front of an on-coming train, without having stopped his car, as required by statute. They assert that, if he had looked, he would have seen the crossing and the train; and that if his vision was obstructed, it was his imperative duty to stop his car before attempting to cross the railway track; that such negligence was more than slight, and bars a recovery in this case.

They invoke the rule announced by this court in the following cases: Ulrikson v. Chicago M. St. P. & P. R. Co., 64 S. D. 476, 268 N. W. 369; Buboltz v. Chicago M. St. P. R. Co., 47 S. D. 512, 199 N. W. 782; Dean v. Chicago, R. I. & P. R. Co., 51 S. D. 233, 213 N. W. 6; Morrisey v. Chicago M. & St. P. R. Co., 57 S. D. 495, 234 N. W. 18 and other cases cited in the brief of respondents' counsel.

It must be conceded that if the decedent saw, or in the exercise of ordinary care and prudence should have seen the crossing or the approaching train, and heedlessly drove his car into the zone of danger without stopping, his own negligence would prevent any recovery in this case. There is, however, an element present, in the case under consideration, that makes the rule announced in the cases, above cited and other cases cited in the briefs of counsel, inapplicable to the situation with which we are now concerned.

The driver of the car, in this case, had never been over the highway, in question, before. He had no prior knowledge of the presence of a railway crossing or railway track as he proceeded westward toward the point where the accident occurred. There was no railway warning sign on the right side of the highway. His view to the north, or to his right, was obstructed by the cornfield and the

high weeds on the right of way, adjacent to the track. He had no clear view to the north, or right, until within 20 or 25 feet of the track. True, if he had looked to the south, or to his left, he would have seen the elevator, the switch stand, the railway track, and perhaps the trail leading to the elevator; but his conduct must be governed by what an ordinary prudent man, traveling over this highway, for the first time, would have done, under like circumstances. We think a jury would be justified in finding that an ordinary careful and prudent man would have watched the road ahead of him, as he proceeded along the highway; and also looked to his right for warning signs. That such a driver could not, as a matter of law, be charged with negligence that constituted a contributing cause, in case of injury, if he failed to keep a lookout to his left. The respondents maintained no warning sign on the north side of the highway. The small county highway sign was somewhat obscured and could not be readily seen. No warning, by bell or whistle, was given by the train crew as the train approached the crossing. If the driver was unaware of the presence of the railway track and the on-coming train, he could not be expected to stop his car before crossing the track.

■ We think the rule to be applied to the facts in the case, under consideration, is aptly stated by U. S. Circuit Court of Appeals, Seventh Circuit, in the case of Stephenson v. Grand Trunk Western R. Co., 110 F.2d 401, 409, 132 A. L. R. 455, as follows: "While we cannot say, from viewing the photographs, that the street 'looked like a tunnel,' we think they disclose a situation inconsistent with defendant's theory that the decedent had warning that he was approaching a crossing. Without minimizing what often has been said regarding the duty of a person approaching a railroad crossing, to employ all of his senses for the purpose of ascertaining whether or not it is safe to cross, we do not believe such duty exists until he has knowledge, or by the exercise of reasonable care, should have had knowledge that there is, in fact, a crossing. Otherwise, a person traveling upon a highway would be under

a continuous duty to look and listen for [trains] regardless of where he was with reference to a railroad crossing."

The driver in the Stephenson case was not familiar with the crossing nor the highway.

The rule above stated is supported by the following cases: Harwood v. Missouri Pac. R. Co., 118 Kan. 332, 234 P. 990, 40 A. L. R. 1305; Chicago & E. R. Co. v. Fretz, 173 Ind. 519, 90 N. E. 76; McClure v. Southern Pac. Co., 41 Cal. App. 652, 183 P. 248, Note 40 A. L. R. 1309.

■ This court gave expression to, and applied the above rule to a limited extent, in the case of Whaley et al. v. Vidal et al., 27 S. D. 627, 132 N. W. 242. This court held in Wiggins v. Pay's Art Store, 47 S. D. 443, 199 N. W. 122, 124, that "It is a rule of law that it is not contributory negligence not to look out for danger when there is no reason to comprehend any."

■ SDC 44.0304 makes it the duty of an automobile driver to stop at a railroad crossing if his view is obstructed, but if a driver is unaware of the presence of a railway crossing and in the exercise of ordinary care cannot discover such crossing in time to avert the accident, he cannot be expected to comply with this statute. The mere violation of a statute, if it is not a legal contributing cause of the injury, will not bar recovery. Harvison et al. v. Herrick, 61 S. D. 245, 248 N. W. 205; Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502; Dwyer v. Peters, 58 S. D. 357, 236 N. W. 301.

■ The negligence of the respondents must be assumed in this case, under the rules of law above stated, upon a review of the motion for a directed verdict.

SDC 52.0923 requires every railroad company to maintain a safe crossing where its railway track crosses a public highway, by means of a grade crossing; and to maintain proper warning signs; and penalties are provided for a failure to comply with this statute.

SDC 52.0924 requires that every locomotive, used in railway service, be equipped with a bell of a specified type; and further provides that when a railroad train approaches a highway grade crossing the bell must be rung or the

locomotive whistle blown at a distance of at least 80 rods from such crossing, and must be continually sounded until the train is over the crossing. Penalties are provided for each violation of this statute.

██ ██ The respondents' fireman and engineer testified that the whistle was sounded as the train approached the crossing at the time of the accident. Appellants' witnesses testified otherwise. We think it was for the jury to say, whether or not a safe crossing was maintained by respondents and proper signals given at the time and place of the accident. We are also persuaded that the claimed contributory negligence on the part of the deceased, under the circumstances of this case, presented a jury question.

██ We believe this is a case where reasonable men may draw different conclusions from the facts established by appellant's evidence and the undisputed facts appearing in the record; and that the trial court erred in directing a verdict for defendant.

██ The provisions of Chapter 160 of the 1941 Session Laws of South Dakota are not applicable to this case. If the deceased saw, or in the exercise of ordinary care could have seen the crossing or the approaching train, or heedlessly drove his car onto the track in front of the on-coming train instead of stopping, his negligence was more than slight, from any view point, and such negligence would bar recovery in this case. On the other hand, if he did not see the crossing or the on-coming train, was not aware of the presence of either, and in the exercise of ordinary care and prudence could not have discovered the proximity of such objects in time to avert the accident, then he was guilty of no contributory negligence that would prevent recovery.

The judgment is reversed and the cause remanded for retrial.

BECK, Circuit Judge, sitting for POLLEY, J.

ROBERTS and SICKEL, JJ., concur.

RUDOLPH, P.J., and SMITH, J., dissent.