THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* MACY.

[No. 8,277. Filed January 8, 1915. Rehearing denied April 14, 1915. Transfer denied May 27, 1915.]

1. RAILROADS.—*Crossing Accidents.—Failure to Signal Approach to Crossing. — Liability. — Statutes. —* Under §5431 Burns 1914, §4020 R. S. 1881, it is not essential to the sufficiency of a complaint, to show the liability of a railroad company for injuries in a crossing accident resulting from a failure to sound the whistle or ring the bell as therein provided, that it contain allegations showing that the train approached the crossing from a point eighty rods distant therefrom. p. 132.

2. RAILROADS.—*Crossing Accidents.—Failure to Signal Approach to Crossing.—Complaint.—*A complaint for injuries sustained by being struck by a train at a public crossing, charging negligence in failing to signal the approach of the train by sounding the whistle or ringing the bell as required by §5431 Burns 1914, §4020 R. S. 1881, was not open to the objection that the facts pleaded did not show a duty owing from defendant to the plaintiff, on the theory that the statute applies only to such trains as approach the crossing from a point distant therefrom equal to the distance defined by the statute, where the necessary and only reasonable inference to be drawn from the facts alleged was that defendant's train approached the crossing from a point more than eighty rods distant therefrom. p. 133.

3. PLEADING.—*Construction.—*A pleading should be reasonably construed as a whole. p. 133.

4. RAILROADS.— *Crossing Accidents.*— *Complaint.*— *Sufficiency.*— In an action for injuries received in a crossing accident, where the complaint alleged facts showing that plaintiff stopped, looked and listened before attempting to cross, that the train approached the crossing, which was a street crossing, at a speed of fifty miles per hour, that there were obstructions to plaintiff's view, that defendant negligently failed to sound the whistle at a distance of eighty to one hundred rods from the crossing, and failed to ring the bell, or otherwise signal the approach of the train, etc., the averments sufficiently showed a duty owing by defendant to plaintiff to operate its train at a lawful rate of speed and to signal its approach to the crossing as required by law, were sufficient to charge actionable negligence in failing to do so, and did not show that plaintiff was guilty of contributory negligence. pp. 133, 134.

5. RAILROADS.—*Failure to Give Crossing Signals.*—*Liability.*—A failure to give the signals required by law on the approach of a train to a highway crossing is negligence *per se*, rendering the company liable for injuries proximately resulting therefrom. p. 134.

6. RAILROADS.—*Crossing Signals.*—*Statutes.*—*Street Crossings.*— The statutory provisions requiring the giving of signals on the approach of a train to a highway crossing apply also to street crossings within the corporate limits of a town, in the absence of an ordinance providing different regulations. p. 134.

7. RAILROADS.—*Operation.*—*Duty to Give Crossing Signals.*—Independently of statute or ordinance, it is the duty of a railroad company to give timely warning of the approach of its train to the crossing of a public street. p. 134.

8. RAILROADS.—*Crossing Accidents.*—*Instructions.*—In an action for injuries sustained in a crossing accident, where negligence was charged in defendant's failure to give warning of the approach of the train to the crossing, and the evidence conclusively showed that plaintiff was a traveler upon the highway and was struck by defendant's train, an instruction stating that "in actions for damages on the ground of negligence alleged" certain things are necessary to recovery, was not erroneous for failure to mention the duty owing by defendant to the plaintiff, especially in view of other instructions defining negligence as applied to the averments of the complaint and informing the jury that before plaintiff could recover he was required to prove the material allegations of his complaint by a fair preponderance of the evidence. p. 135.

9. APPEAL.— *Review.*— *Instructions.*— *Incomplete Instructions.*— A party can not predicate error on the giving of an incomplete

instruction, in the absence of a showing that a correct and complete instruction on the subject was tendered and refused.   p. 135.

10.  APPEAL.—*Review.—Harmless Error.—Instructions.*—The giving of an instruction in an action for injuries received at a railroad crossing stating that in actions for damages on the ground of negligence as alleged certain things are essential to recovery, but omitting to mention the duty owing to plaintiff by the defendant, if erroneous because of such omission, was harmless where the undisputed facts were such as to impose on defendant the duty to give warning of the approach of its train to the crossing.   p. 136.

11.  APPEAL.—*Review.—Instructions.*—The objection that an instruction on the subject of contributory negligence informed the jury that all evidence of contributory negligence must come from the defendant, can not prevail where the closing part of the instruction stated that the burden of proving the defense of contributory negligence was on defendant, but if the evidence in the case, whether produced by the plaintiff or the defendant, or both of them combined, established contributory negligence, it would be available as a defense.   p. 136.

12.  RAILROADS.—*Crossing Accidents.—Contributory Negligence.—Jury Question.*—Where there is evidence to show that a traveler exercised some care in attempting to cross a railroad track, and that there were obstructions to his view and conditions which rendered hearing difficult, or where there is a controversy in the evidence as to whether any care was used, or as to the *quantum* of care, or where the facts are such as to warrant the drawing of different inferences as to the exercise of care, or want of care, the question of contributory negligence is for the jury. p. 136.

13.  RAILROADS.— *Crossing Accidents.— Issues.—Existence of Speed Ordinance.—Right to Rely on Obedience to Ordinance.—Instructions.*—Where the complaint in an action for injuries in a crossing accident alleged that the train approached the crossing at a speed in excess of that provided by an ordinance of the municipality, such complaint and the answer in general denial put in issue the fact that there was such an ordinance, duly enacted and in force, at the time of the injury, and such ordinance was admitted in evidence on what the court deemed sufficient *prima facie* proof of its passage, an instruction that if the jury found that such an ordinance was at the time in force, the plaintiff had a right to presume and rely on the presumption that defendant would not violate it, etc., was not erroneous and was properly within the issues and proof.   p. 138.

14.  APPEAL. — *Review. — Harmless Error. — Instructions.* — In instructing the jury that if it found that a certain speed ordi-

nance was in force at the time of the injury to plaintiff, who was struck by a train alleged to have been operated at an unlawful speed, the plaintiff had a right to rely on the presumption that the defendant would not violate such ordinance, etc., the error, if any, in failing to tell the jury what was essential to show that the ordinance had been duly passed and was in force, was harmless, where it was admitted that there was no conflict in the evidence on that subject and appellant requested no instruction as to that matter. p. 139.

15. APPEAL.—*Review.*—*Instructions.*—In an action for injuries to a traveler on a public street who was struck at a railroad crossing, where it was alleged that the train was operated at a speed in excess of that allowed by an ordinance, and in violation of the statute, instructions telling the jury that on due proof of the violation of such ordinance, or of the statute, and that such violation was the proximate cause of plaintiff's injury, he could recover, if free from contributory negligence, and which dealt with the conditions alleged, of which there was proof, and told the jury that plaintiff was at all times bound to use his senses and to exercise care commensurate with the danger and conditions confronting him, were unobjectionable. p. 139.

16. DAMAGES.—*Personal Injuries.*—*Measure of Damages.*—*Peril to Life.*—*Instructions.*—In an action for injuries sustained in a railroad crossing accident, while it was error in an instruction setting out the elements of damages to state that damages might be awarded for the peril to plaintiff's life, if any was shown, etc., was harmless, where the evidence showed that plaintiff had a life expectancy of nine years and had an earning capacity of about $2,000 per year, that his salary was wholly lost for a period of seven months, and that his health was permanently injured and his earning capacity greatly reduced, and the amount of the verdict, which was for $2,500, was not questioned in any way. p. 139.

17. APPEAL.—*Excessive Damages.*—*Waiver of Error in Instructions.*—In order to present any question as to error in the amount of recovery, it must be duly assigned as ground for new trial; hence, where such question is not thus presented, error in an instruction, objected to solely on the ground that it stated an erroneous measure of damages and enhanced the amount of the verdict, is deemed waived. p. 140.

18. RAILROADS.—*Crossing Accidents.*—*Evidence.*—*Admissibility of Speed Ordinance.*—*Sufficiency of Identification.*—In an action for injuries sustained in collision with a train at a street crossing, where it was charged that the train was being operated in excess of the speed allowed by ordinance, the ordinance and the minutes of the proceedings connected with its passage were com-

petent under the issues, and sufficiently identified to warrant their admission in evidence, where it appeared that the ordinance was enacted in 1885, that it declared an emergency and stated that it would be in full force and effect from its passage, and the minutes showing its adoption and bearing the signatures of the proper officers, together with the page of the ordinance book where the ordinance was recorded, etc., were identified by the town clerk. pp. 141, 142.

19. MUNICIPAL CORPORATIONS. — *Ordinances.* — *Proof of Adoption and Contents.*—The authorized record of an ordinance and of the proceedings by which it was enacted afford the best evidence of its enactment and contents, notwithstanding statutory provisions permitting such proof by sworn or duly certified copies. p. 142.

20. MUNICIPAL CORPORATIONS.—*Ordinances.—Validity.—Evidence.* —The duly identified record or ordinance book of a municipality containing the ordinance in question, is *prima facie* evidence of the validity of such ordinance and that all preliminary steps essential to its due enactment and enforcement have been regularly taken. p. 142.

21. MUNICIPAL CORPORATIONS.—*Ordinances.—Continuance in Force.* —*Presumptions.*—An ordinance duly proven is presumed to continue in force until the contrary is shown. p. 142.

22. PLEADING.—*Non Est Factum.—Verified General Denial.—Issues Presented.—Adoption of City Ordinance.*—A verified general denial performs the office of an answer of *non est factum* in that it puts in issue the execution of the instrument sued on in the broad and comprehensive sense which includes signing, delivery, alteration and anything which goes to show that it is not the instrument of the party sought to be bound, but the filing of a verified general denial to a complaint for personal injuries alleged to have been caused by defendant's violation of a municipal speed ordinance raises no different issue with respect to the ordinance than that which is raised by an ordinary general denial. p. 143.

23. RAILROADS. — *Crossing Accidents. — Evidence. — Contributory Negligence.—Jury Question.*—In an action for injuries to plaintiff while attempting to cross defendant's railroad tracks, where there was evidence to the effect that plaintiff stopped and waited until the east bound train had cleared the crossing; that he looked east and neither saw nor heard an approaching train; that the train going west approached the crossing at about thirty miles per hour without ringing the bell or sounding the whistle; that as the east bound train cleared the track he saw a pedestrian starting to cross the track coming toward him, whereupon he drove his horse onto the crossing, still looking to the east,

and just as he entered upon the main track he saw an approaching train; that he instantly endeavored to back off the track, but was unable to do so, etc., the court can not say that the plaintiff was guilty of contributory negligence as a matter of law, and, the question being one of fact for the jury, its verdict finding him free from such negligence was supported by the evidence, though there was evidence warranting a contrary finding. p. 144.

From Jay Circuit Court; *James J. Moran,* Judge.

Action by William W. Macy against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*LaFollette & McGriff* and *Macy, Nichols & Bales,* for appellee.

Felt, J.—Appellee brought this action to recover damages for personal injuries received at a railroad crossing through the alleged negligence of appellant. The first paragraph of complaint on which the cause was tried, in substance shows, that on August 4, 1910, appellant owned and operated a line of railroad in and through the town of Ridgeville, Randolph County, Indiana; that the railroad passed through the town in a general direction from south of east to north of west across the streets of the town, including Portland Street; that Portland Street runs north and south through a populous part of the town and people were constantly using said street at the point where appellant's road crossed it; that the town had a population of about 2,000, and was incorporated under the laws of the State; that on and prior to August 4, 1910, there was in said town an ordinance, duly and legally enacted, in full force and effect, regulating the speed of railroad trains within the corporate limits of the town. A copy of the ordinance is set out in the complaint. That by the provisions of said ordinance it was unlawful for appellant to run its trains within the corporate limits of the town at a greater speed than six miles

an hour; that appellant maintained a side track on the north side of its main track and parallel therewith, extending to the west more than one-fourth mile, and to the east about one-fourth mile from said crossing; that there was a dwelling house on the east side of the street immediately north of the side track; that west of the house, extending south, there was a line of shade trees then in full foliage; that the house and shade trees shut off the view to the east, along the railroad, of a traveler on Portland Street, approaching the railroad from the north, so that a view to the east along said railroad could not be obtained until within twenty-five feet of said switch track; that about 9 a. m. on said day a train of freight cars was on the side track and across Portland Street; that there was another locomotive engine west of said crossing about fifty yards; that both engines were making loud noises by escaping steam; that at the time appellee approached said crossing from the north, in a light vehicle, driving a gentle horse, well broken to drive and easily controlled; that he stopped his horse about twenty-five feet from said switch track and looked both ways for approaching trains and listened but neither saw nor heard any train approaching; that after a few minutes the freight train on the switch track was moved to the east and across Portland Street; that appellee deemed this an invitation to cross and drove forward in a careful and prudent manner, and looked both ways and listened for an approaching train until his horse was entering upon the main track, when suddenly, and without warning, appellant negligently and carelessly ran a locomotive and train of cars over its main line of railroad and across Portland Street from east to west at a high and unlawful rate of speed, contrary to the provisions of the ordinance hereinbefore set out, to wit, at the rate of fifty miles per hour, and negligently failed to sound the whistle of the locomotive engine at a distance of eighty to one hundred rods of the crossing, as the same approached the crossing, or to sound

the whistle at all in approaching the crossing, or to ring the bell of the locomotive, and negligently failed to give any alarm as the locomotive and train of cars approached the crossing; that because of the dwelling and shade trees, and because of the engine and cars on the switch track, appellant was unable to see, and because of the noise of the locomotives he was unable to hear, an approaching train from the east; that appellee relied on appellant to operate its trains in a prudent and lawful manner, and not at a speed in excess of that authorized by said ordinance; that when appellee first came to a point in the street where he could see an approaching train from the east, a train was approaching the crossing at a distance of not more than forty feet, and was in such rapid motion that appellee could not cross ahead of it; that he stopped his horse and pulled back on the lines to back his horse off the track, but on account of the great speed at which such train was moving, he was unable to avoid a collision; that the train struck appellee's horse and carriage and threw appellee out and injured him, which injuries are set out in detail; that he was permanently injured; that if the locomotive engine and train of cars had been operated at a lawful rate of speed and the statutory signals had been given, appellee would have seen and heard the locomotive and train of cars as it approached the crossing in time to have avoided being struck. Special damages are also alleged.

A demurrer to the complaint for insufficiency of the facts alleged, was overruled and appellant filed a verified general denial. Upon the issues thus formed a trial by jury was had which resulted in a verdict and judgment in favor of appellee for $2,500. Appellant's motion for a new trial was overruled.

The errors assigned and relied on for reversal are, the overruling of the demurrer and the motion for a new 1. trial. Appellant contends that the complaint is insufficient in that it fails to show any duty owing from

the appellant to the appellee at the time and under the circumstances complained of; that the facts pleaded

2. in the complaint fail to show that it was the appellant's duty to sound the whistle as required by law; that even though the statute imposes upon those operating trains the duty to sound the whistle and ring the bell at a given place, such statute does not and can not apply to all trains, but only to such trains as approach the crossing from a point distant therefrom, equal to the distance defined by the statute; that plaintiff, in order to state a cause of action under §5431 Burns 1914, §4020 R. S. 1881, must by proper allegations of fact show that the train which it is averred, did not give the signals, but did cause the injury sued for, did approach the crossing from a point eighty rods distant from such crossing. Appellant does not cite any authority to sustain such construction of the statute and we are unable to find any. This precise question was, however, raised by the same appellant in the case of *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 455, 95 N. E. 1109, 42 L. R. A. (N. S.) 367, and decided adversely to appellant's contention. However, in the present case we deem it sufficient to say that the necessary and only reasonable inference to be drawn from the facts averred is that appellant's train approached the public street crossing from a point more than eighty rods distant therefrom.

A pleading should be reasonably construed as a whole. It appears from the averments of the complaint that appellee was traveling on Portland Street and approached

3. appellant's tracks from the north; that he stopped and looked and listened before attempting to cross; that the train from the east approached the crossing

4. at great speed, to wit, fifty miles per hour; that there were some obstructions to appellee's view; that appellant "negligently failed to sound the whistle of said locomotive engine at a distance of eighty to one hundred

rods of said crossing, as the same approached said crossing, or to sound the locomotive whistle of said locomotive engine at all in approaching said crossing, or to ring the bell of said locomotive engine as the same approached the said crossing, and * * * negligently failed to give any alarm of said approaching locomotive engine." The duty to give statutory signals is one fixed by law, and a

5. failure to give such signals is negligence *per se* and renders the railroad company liable for injuries which are the proximate result of such failure, when the person injured is without fault contributing thereto. *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313; *Chicago, etc., R. Co.* v. *Coon* (1911), 48 Ind. App. 675, 686, 93 N. E. 561, 95 N. E. 596, and cases cited; *Antioch Coal Co.* v. *Rockey* (1907), 169 Ind. 247, 254, 82 N. E. 76; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 609, 612, 100 N. E. 675, 102 N. E. 99; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 375, 37 N. E. 150, 38 N. E. 594; *Wabash R. Co.* v. *McNown* (1913), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 383. In the absence of an ordinance providing

6. regulations differing from those prescribed by the statute, the statute applies to crossings within the limits of such incorporated town. *Pittsburgh, etc., R. Co.* v. *Terrell, supra; Lake Shore, etc., R. Co.* v. *Myers, supra.* Independent of a statute or ordinance, it was the

7. duty of appellant to give reasonable and timely warning of the approach of its train to the crossing of such a public street as that described in the complaint. *Lake Shore, etc., R. Co.* v. *Myers, supra; Pittsburgh, etc., R. Co.* v. *Terrell, supra.* The averments of the complaint are sufficient to show that appellant owed the duty

4. to appellee of running its train at a lawful rate of speed and of giving warning of its approach to the crossing as required by law, and to charge appellant with actionable negligence in failing so to do, and to warrant

recovery, by appellee, for the injuries proximately result-
ing therefrom. The averments of the complaint do not show
appellee to have been guilty of contributory negligence as
a matter of law, and it was, therefore, a question for the
jury to determine from the evidence whether he exercised
due care to avoid injury in approaching said tracks. *Lake
Shore, etc., R. Co.* v. *Myers, supra,* and cases cited; *Pitts-
burgh, etc., R. Co.* v. *Terrell, supra; Pittsburgh, etc., R.
Co.* v. *Burton, supra.*

Complaint is made of instruction No. 4 given by the
court of its own motion, the specific objection being that
it purports to tell the jury the elements necessary
to be established in order to entitle appellee to recover
and omits the first and most essential element of
actionable negligence, viz., a specific duty owing from the
appellant to the appellee. The instruction does not spe-
cifically mention the duty owing by appellant to appellee,
if any, but it begins by stating that, "In actions for dam-
ages on the ground of negligence as alleged in the com-
plaint", certain things are necessary to recovery. By other
instructions negligence was properly defined and applied
to the averments of the complaint, and the jury was in-
formed that before appellee could recover he must prove
by a fair preponderance of the evidence, the material allega-
tions of his complaint—that appellant had exceeded the
speed limit fixed by the ordinance, or that it had failed to
give statutory signals in approaching the crossing, and
that appellee's injury was caused by such negligent
failure. The instruction was correct as far as it
went, and if appellant desired to predicate error on
the giving of it, a correct and complete instruction on the
subject should have been tendered by it, but this was not
done. *Chicago, etc., R. Co.* v. *Hamerick* (1912), 50 Ind.
App. 425, 448, 96 N. E. 649; *Baltimore, etc., R. Co.* v.
*Keiser* (1912), 51 Ind. App. 58, 73, 94 N. E. 330. There
was no dispute in the evidence that appellee was a traveler

on the public highway and was struck by one of appellant's trains at the crossing. With these facts undisputed, the law fixes the duty appellant owed to appellee of giving warning of the approach of its trains to the highway crossing. Therefore if it should be conceded that the instruction is technically inaccurate, it is plain that appellant was not harmed by giving it to the jury. *Pittsburgh, etc., R. Co.* v. *Terrell, supra; Shirley Hill Coal Co.* v. *Moore* (1914), 181 Ind. 513, 103 N. E. 802; *Burford* v. *Dautrich* (1914), 55 Ind. App. 384, 103 N. E. 953.

It is claimed that instruction No. 5 given by the court of its own motion was erroneous in that the jury was told that all evidence of contributory negligence must come from the appellant. The latter part of such instruction reads: ''The burden is upon the defendant to establish such defense (contributory negligence) but if the evidence in the case whether produced by the plaintiff or the defendant, or both of them combined, should establish such contributory negligence, it would be available for the defendant as a defense.'' Again in instruction No. 6, the jury was told: ''You have likewise been informed that contributory negligence to be available as a defense must be established by a fair preponderance of all the evidence given in the cause.'' The instruction complained of is not objectionable for the reasons urged against it and it is clear that the jury was given a correct idea of the law on the subject with which it deals.

Instruction No. 7 states a general definition of negligence that has been approved many times. Appellant contends that the court erred in the giving of this instruction, ''for the reason that the appellee's duties as he approached and attempted to cross appellant's railroad tracks were exactly prescribed as a matter of law and were not fixed by the conduct of a reasonably prudent person, to be determined by the jury as it was left by this instruction to be done.'' The law is well established with

reference to the duty of a traveler on a public highway when he is about to cross a railroad track which passes over such highway, but where there is evidence tending to show that in attempting to cross the railroad tracks the traveler exercised some care, and that there were obstructions to his view and conditions which rendered hearing difficult, or where there is a controversy in the evidence as to whether any care was used, or as to the *quantum* of care, or where the facts and circumstances proven are of such a character that reasonable minds may draw different inferences as to the care, or want of care, exercised by such person, the question of care, or contributory negligence, is one of fact to be submitted to and determined by the jury, from the evidence, under appropriate instructions by the court as to the law applicable to the question, and the court should not, in such cases, undertake to declare as a matter of law that the traveler so situated and circumstanced, did or did not, discharge the duty imposed on him by the law, of using reasonable and ordinary care to avoid an accident— that is, care commensurate with the danger that might reasonably be anticipated under the particular circumstances shown by the evidence. The rules of law applicable to such cases have been reiterated many times by our courts of last resort, and have been so recently restated by each of such courts that we do not repeat them here. *Virgin* v. *Lake Erie, etc., R. Co.* (1913), 55 Ind. App. 216, 101 N. E. 500, and cases cited; *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313; *Louisville, etc., Traction Co.* v. *Lottich* (1915), *post* 426, 106 N. E. 903; *Pittsburgh, etc., R. Co.* v. *Terrell, supra,* and cases cited. The instruction complained of is correct as a general proposition of law and applicable to the issues of the case at bar.

By instruction No. 8 the court told the jury that if it found "from the evidence that at the time of the controversy in this case, there was in force an ordinance in the

town of Ridgeville'' limiting the speed of trains ''to six miles per hour, then the plaintiff had the right to presume'' and rely on the presumption that appellant would not violate the ordinance, which presumption would continue until appellee learned, or could by the exercise of reasonable care ascertain, that the ordinance was not observed; that notwithstanding such presumption and right of appellee, he was not thereby excused from exercising ''such care as the situation rendered reasonable and possible'', and was required to diligently use his senses and to exercise reasonable and ordinary care to avoid a collision. Appellant insists that this instruction is erroneous in permitting the jury to determine from the evidence the existence of the ordinance and in permitting appellee, if it found such ordinance to be in force, to rely on a compliance therewith. The complaint and answer put in issue, the fact that there was such ordinance, duly enacted and in force, at the time of the collision charged in the complaint. Such ordinance when duly enacted has the force and effect of law within the bounds of the municipality which enacts it. The court, on what it deemed sufficient *prima facie* proof of the passage of the ordinance, admitted it in evidence, but such admission in evidence did not deprive appellant of the right of showing that the ordinance was invalid, that it had been repealed or amended, or that for some reason it was not in force and binding on appellant at the time of the accident. Under such issues and proof, the instruction was not erroneous or harmful. *Chicago, etc., R. Co.* v. *Fretz* (1910), 173 Ind. 519, 532, 90 N. E. 76; *Pittsburgh, etc., R. Co.* v. *Rogers* (1910), 45 Ind. App. 230, 246, 87 N. E. 28; *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 68 N. E. 266; *Lake Erie, etc., R. Co.* v. *Brafford* (1896), 15 Ind. App. 655, 666, 44 N. E. 551.

Under the issues in this case, the court should have told the jury what was necessary to be proven to show that the ordinance had been duly passed and that it was in force,

but it was for the jury to say, whether such proof 14. had been made, if there was any dispute in the evidence on the subject, or if the evidence relating thereto was such that reasonable minds might draw different inferences therefrom. Appellant requested no instruction on the subject and in its brief states: "There is no conflict in the evidence relative to the alleged ordinance introduced in evidence." In the light of this admission, it is certain that whatever view may be taken of the instruction, appellant was not harmed by leaving the jury to determine from the evidence the existence of the ordinance.

The objections urged to instructions Nos. 9, 10, 11, 12 and 13, are not tenable, and are in effect met by our discussion of other questions and by the authorities cited. These 15. instructions in effect told the jury that on due proof of the violation of said ordinance, or of the statute aforesaid, and that such violation was the proximate cause of appellee's alleged injury, he might recover, provided he was himself free from negligence contributing to his injury. They deal with the conditions alleged, and of which there was some proof, and told the jury that appellee was at all times bound to use his senses and to exercise care commensurate with the dangers and conditions which confronted him. *Virgin* v. *Lake Erie, etc., R. Co., supra.*

Instruction No. 15 is complained of because in stating the elements for which compensation might be awarded, if the jury found for the plaintiff, it mentions "The 16. peril to his life if any is shown" and for the alleged reason that it authorizes double damages, that is, damages for loss of time and for permanent injury. We do not think the instruction is objectionable for any of the reasons stated, except the one relating to peril of life. *Chicago, etc., R. Co.* v. *Fretz, supra.* There may be cases where the issues are so framed and the evidence of such a character as to make peril to life an element of damages, but conceding that in this case the element should not have been

included, the question remains, Is it harmful error for which the judgment should be reversed? After setting out the elements that might be taken into consideration, the instruction concludes—''and you should finally award·him an amount as in your judgment under the evidence on·the subject, as will compensate him for his injuries, not, however, exceeding the amount named in the complaint.'' The jury awarded appellee $2,500 damages. There was evidence tending to show that appellee had an expectancy of more than nine years; that he was in good health and earning about $2,000 per annum in addition to traveling expenses; that his salary was lost altogether for a period of seven months; that his health was permanently impaired and his earning capacity greatly lessened. In appellant's motion for a new trial the amount of the verdict is not questioned in any way and a new trial was not asked on the ground that the damages awarded were excessive.

It has been held that to present any question on appeal as to error in the amount of the recovery it must be duly assigned as a cause for a new trial, and that failure 17. so to do waives any objection to the amount of the verdict. *Davis* v. *Montgomery* (1890), 123 Ind. 587, 589, 24 N. E. 367; *Hyatt* v. *Mattingly* (1879), 68 Ind. 271, 276; *Cox* v. *Bank of Westfield* (1897), 18 Ind. App. 248, 251, 47 N. E. 841; *Ohio, etc., R. Co.* v. *Judy* (1889), 120 Ind. 397, 398, 22 N. E. 252; *City of Indianapolis* v. *Woessner* (1913), 54 Ind. App. 552, 103 N. E. 368. In *Peabody-Alwert Coal Co.* v. *Yandell* (1913), 179 Ind. 222, 229, 100 N. E. 758, the court considered the effect of the erroneous admission of evidence tending only to enhance the damages and said: ''Conceding that it was incompetent, it was nevertheless harmless, for it is not contended that the damages assessed were excessive.'' On principle, it follows that where it has not been assigned as cause for a new trial that the damages are excessive, or in suits on contract, that there is error in the amount of the recovery, being too large, an error in

an instruction, complained of only on the ground that it gave the jury an erroneous measure of damages and enhanced the amount of the verdict, will be deemed waived by the appellant. *Terre Haute, etc., Traction Co.* v. *Frischman* (1914), 57 Ind. App. 452, 107 N. E. 296; *Houston, etc., R. Co.* v. *Boozer* (1888), 70 Tex. 530, 8 S. W. 119, 8 Am. St. 615; *Peabody-Alwert Coal Co.* v. *Yandell, supra.*

The instructions given fairly and fully state the law of the case and no error harmful to appellant is pointed out either in the giving, or in the refusal of instructions tendered.

In appellant's motion for a new trial it assigns as causes, error in admitting in evidence the speed ordinance and the minutes of the meeting of the town board which 18. show the passage of the ordinance. It is asserted that this ordinance was inadmissible because no proof was made of its adoption as required by law; or that it was signed, or published as required by law, or that appellant had notice or knowledge of the ordinance.

The act of 1879 relating to incorporated towns was in force in 1885, when the ordinance in question was passed. It authorized town boards to enact ordinances and put them in force without publication by declaring an emergency. The ordinance offered in evidence declared an emergency and states that it shall be in full force and effect from and after its passage. Acts 1879 p. 201; subd. 6, §3333 R. S. 1881; subd. 6, §4357 Burns 1894. The ordinance record of the town of Ridgeville was identified by the town clerk, the page where the ordinance was recorded and the number of the ordinance were designated, and appellee's exhibit "A" was identified as a true and duly authenticated copy of the ordinance. The minutes of the meeting of the town board of August 13, 1885, when the ordinance was passed, were duly identified by the town clerk together with the signature of the president of the board and that of the

secretary who were such officers at the time the ordinance was enacted. The ordinance and the minutes of the town board so identified were admitted in evidence over appellant's objections. It has been held that the authorized record of an ordinance and of the proceedings by which it was enacted, afford the best evidence of its enactment and contents, and that this rule is not affected or changed by statutes which permit proof thereof by sworn, or duly certified copies. *Green* v. *City of Indianapolis* (1865), 25 Ind. 490, 492; 8 Ency. Evidence 815 *et seq.* The ordinance and the minutes of the proceedings were sufficiently identified to authorize their admission in evidence and were competent under the issues of the case. *Pittsburgh, etc., R. Co.* v. *Rogers, supra; Green* v. *City of Indianapolis, supra; Lake Erie, etc., R. Co.* v. *Brafford, supra.*

Where the authorized record or ordinance book of a municipality containing the ordinance in question, is duly identified, it is *prima facie* evidence of the validity of the ordinance and that all preliminary steps essential to its due enactment and enforcement have been regularly taken. *Lake Erie, etc., R. Co.* v. *Brafford, supra; Pittsburgh, etc., R. Co.* v. *Rogers, supra; Rowland* v. *City of Greencastle* (1902), 157 Ind. 591, 599, 63 N. E. 474; 2 McQuillin, Mun. Corp. §859; 8 Ency. Evidence 819-823; *Terre Haute, etc., R. Co.* v. *Voelker* (1889), 129 Ill. 540, 549, 22 N. E. 20; *Barr* v. *Auburn* (1878), 89 Ill. 361; *Selma St., etc., R. Co.* v. *Owen* (1901), 132 Ala. 420, 430, 31 South. 598. In the case at bar the ordinance contains an emergency clause, and the minutes offered in evidence show that all members of the town board were present and that the ordinance was duly enacted. An ordinance when duly proven is presumed to continue in force until the contrary is shown. 2 McQuillin, Mun. Corp. §850.

Appellant contends that by virtue of its verified general denial, appellee was compelled to go further and show in

detail all preliminary steps in the passage and publication of the ordinance, and to show that appellant had knowledge thereof. In this State the plea of *non est factum,* puts in issue the execution of the instrument counted upon in the pleading to which such plea is directed. Literally it means it "Is not (his) deed." In *Evans* v. *Southern Turnpike Co.* (1862), 18 Ind. 101, the court said: *"Non est factum* was the general issue at common law in actions on bonds, and its office was to put in issue the execution of the deed sued on. It was not necessary that the plea should be verified. In *Indiana,* the term, *non est factum,* is and has been applied to all pleas, answers, and replies that deny the execution of a written instrument constituting the foundation of the previous pleading answered by such denial, but in this State, such pleading, under our statute, has not been regarded as having the effect to put in issue the execution of any written instrument, but only its existence, unless the pleading was verified by oath (Ind. Dig. 651; [*Moorman* v. *Barton* (1861),] 16 Ind. 206; [*Unthank* v. *Henry County Turnpike Co.* (1855),] 6 Ind. 125) and hence, where such pleading was not verified, no evidence touching the execution of the instrument was admissible, not being relevant to any issue. This has been held under all the statutes, varying though they have been, somewhat, in their language, because the purpose of them all has been, as has been always understood, to deprive the plea or answer of *non est factum* of the effect of putting in issue the execution of the writing, unless it was sworn to. * * * The defendant ought to know better than anybody else whether he executed the note in suit or not, and if he will not deny it under oath, by a general or special *non est factum,* there is no hardship in holding the execution admitted. The general denial under oath is equivalent in code pleading, to a verified *non est factum,* and puts an issue the execution (including the once existence) of the instrument sued on."

The ordinary general denial puts in issue the existence of the instrument in question, but the *non est factum* goes farther and puts in issue. its execution in the broad and comprehensive sense which includes signing, delivery, alteration and anything which goes to show that it is not the deed, contract, or other instrument of the party sought to be bound thereby.

The passage of an ordinance is in the nature of a legislative enactment. The ordinance has no existence until legally enacted and put in force. Where it is alleged that an ordinance had been enacted and was in force at a particular time, the general denial puts those facts in issue and the party alleging them must prove them as alleged or fail upon the issue to which they are material. We therefore conclude that the issue is not different in this case, than it would have been under the ordinary general denial and that the plea of *non est factum* is not an appropriate pleading in cases like the one at bar. §370 Burns 1914, §364 R. S. 1881. The history of the plea and its use in this State, so far as our research has revealed, warrants no such use, and the nature of the issue it is intended to present seems to limit it to cases involving written instruments, such as notes, bonds, deeds, mortgages, contracts and the like. 9 Ency. Evidence 2 *et seq.; 29* Cyc. 1057; *Patterson* v. *Churchman* (1890), 122 Ind. 379, 385, 22 N. E. 662, 23 N. E. 1082; *Lamb* v. *Holmes* (1871), 60 Ill. 497; *Neely* v. *Chinn* (1846), 8 Blackf. 84; *Godman* v. *Henby* (1905), 37 Ind. App. 1, 76 N. E. 423; *Harris* v. *Randolph County Bank* (1901), 157 Ind. 120, 129, 60 N. E. 1025; *Palmer* v. *Poor* (1889), 121 Ind. 135, 22 N. E. 984, 6 L. R. A. 469; *Fudge* v. *Marquell* (1905), 164 Ind. 447, 453, 72 N. E. 565, 73 N. E. 895.

Appellant earnestly insists that the verdict can not stand because the evidence, without conflict, conclusively

23. establishes the contributory negligence of appellee in attempting to cross appellant's tracks as he is

shown to have done. In presenting this proposition appellant argues at length the rules of law which state the duty of a traveler on a highway when attempting to cross a railroad. Emphasis is laid upon the fact that appellee was familiar with the crossing and that by waiting he could have ascertained his danger in time to have avoided the accident. It is asserted that he could not drive upon the tracks while his view of the main track east of the highway, was obstructed by the east bound train on the south, or switch track, without being guilty of contributory negligence.

There was evidence to the effect that appellee stopped about twenty-five feet south of the switch track and waited until the east bound train cleared the crossing; that he looked to the west and saw the train there had stopped; that he looked to the east, listened and neither saw nor heard an approaching train; that the train going west on the main track approached the crossing at about thirty miles an hour without ringing the bell or sounding a whistle; that as soon as the east bound train cleared the highway appellee saw a lady pedestrian on the highway starting to cross the track from the south to the north, coming toward him; that he then struck his horse and started across the tracks going at the speed of about four or five miles per hour; that he continued to look to the east and just as he crossed the south track and his horse was entering upon the main track, for the first time he saw the approaching train; that he instantly endeavored to stop his horse and back it off the track, but was unable to do so; that the engine struck the horse and vehicle and threw appellee about forty feet and severely injured him.

On such a state of facts the court can not declare as a matter of law, that appellee was guilty of negligence in attempting to cross. There was unquestionably evidence from which the jury might have so found. But considering

appellee's situation, his knowledge of the trains and of the crossing, the obstructions to his view, the fact that he saw a pedestrian whose view to the east was unobstructed starting to cross the tracks, and the evidence tending to show that he looked and listened and used some care to avoid a collision and that the train from the east approached at a high, dangerous and unlawful rate of speed without ringing the bell or sounding a whistle, we hold that the question of appellee's contributory negligence was properly submitted to the jury to be determined from the evidence, and that there is evidence to sustain the verdict. *Lake Shore, etc., R. Co.* v. *Myers, supra; Chicago, etc., R. Co.* v. *Hamerick, supra; Chicago, etc., R. Co.* v. *Fretz, supra; Virgin* v. *Lake Erie, etc., R. Co., supra; Pittsburgh, etc., R. Co.* v. *Terrell, supra; Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 447, 99 N. E. 1005.

No prejudicial error has been shown. The death of appellee during the pendency of this appeal having been suggested, the judgment is affirmed as of date of submission.

Hottel, C. J., Caldwell, P. J., Ibach, Shea and Powers, JJ., concur.

NOTE.—Reported in 107 N. E. 486. As to the care a railroad company must exercise in running its trains over crossings, see 26 Am. Rep. 207. As to the violation of the rule as to giving of signals as evidence of negligence towards member of the public, see 8 L. R. A. (N. S.) 1063. As to the duty of a railroad to give signals at other than grade crossings, see 3 Ann. Cas. 361; 16 Ann. Cas. 1234. As to the duty of a railroad to give signals at private crossings, see 21 Ann. Cas. 568. As to the admissibility of parol evidence to prove municipal ordinance, see Ann. Cas. 1915 A 709. See, also, under (1, 2) 33 Cyc. 1058, 1057; (3) 31 Cyc. 83; (4) 33 Cyc. 1057, 1060; (5) 33 Cyc. 967; (6) 33 Cyc. 962; (7) 33 Cyc. 958; (8) 33 Cyc. 1129; 38 Cyc. 1778; (9) 38 Cyc. 1693; (10) 38 Cyc. 1635; (11) 29 Cyc. 644; (12) 33 Cyc. 1121, 1111; (13) 33 Cyc. 1027, 1132; 28 Cyc. 394; (14) 38 Cyc. 1637, 1635; (15) 33 Cyc. 1129; (16) 38 Cyc. 1814; (17) 29 Cyc. 745; (18, 19) 28 Cyc. 397; (20) 28 Cyc. 398; (21) 16 Cyc. 1052; (22) 31 Cyc. 195; (23) 33 Cyc. 1111, 1093.