CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY v. PROHL, ADMINISTRATRIX.

[No. 9,224. Filed April 18, 1917.]

1. RAILROADS.—*Crossing Accidents.—Evidence.—Sufficiency.—Contradictory Testimony.*—In an action for death in a railroad crossing accident, the testimony of the principal witnesses of the decedent, though containing contradictory statements, is sufficient to support a verdict for plaintiff where sufficient evidence may be gathered from such testimony to sustain the verdict in its essential features. p. 307.

2. TRIAL.—*Credibility of Witness.—Jury Question.—Inconsistent Statements.*—It is within the province of the jury to reconcile an apparent conflict in the evidence of a witness on direct and cross-examination, and to evolve the truth from such testimony. p. 308.

3. APPEAL.—*Waiver of Error.—Briefs.*—In an action for death in a railroad crossing accident, error in admitting, on the question of damages, evidence as to the amount of decedent's annual earnings is not available on appeal where the assignment in the motion for a new trial that the damages are excessive is waived by failure of appellant to direct a point thereto in its briefs. p. 308.

4. APPEAL.—*Presenting Questions for Review.—Admission of Evidence.—Objections.*—An objection made in the trial court in general terms that evidence offered is immaterial presents no question for review on appeal. p. 309.

5. RAILROADS.—*Crossing Accidents.—Evidence. — Admissibility. —Competency of Employe.*—In an action for the death of a driver of an automobile struck by a train at a railroad cross-

ing, where the complaint alleged that defendant railroad was negligent in employing an incompetent crossing watchman to operate the safety gates, evidence that the gateman was generally incompetent was not admissible, since in such a case the issue involved was whether the gateman exercised reasonable care, the question of competency not being of controlling importance. p. 309.

6. RAILROADS.—*Crossing Accidents.—Res Gestae.—Physical Condition of Crossing Watchman.*—In an action for the death of an automobile driver struck by a train at a railroad crossing, where the complaint charged that the operator of the safety gates was unfit to perform his duties because of the excessive use of narcotics and intoxicants, evidence to show his physical condition at the time of the accident was admissible as part of the *res gestae.* p. 311.

7. RAILROADS.—*Crossing Accidents.—Refusal of Instructions.— Negligence.—Violation of Speed Ordinance.—Liability.*—In an action for the death of an automobile driver struck by a train on a railroad crossing, where one of the grounds of negligence charged was that the train was being run at the time of the accident at a speed exceeding the limit fixed by city ordinance, defendant's requested instruction that, if the railroad was guilty of no negligence other than operating its train at an excessive speed, plaintiff could not recover, was properly refused, especially as another instruction given at defendant's request recognized that a verdict for plaintiff might be based on such negligence. p. 312.

8. RAILROADS.—*Crossing Accidents.—Instruction. — Negligence. —Storage of Cars on Sidetrack.*—In an action for the death of an automobile driver struck by a train on a railroad crossing where the complaint charged that defendant stored cars near the crossing on a sidetrack thereby obstructing both view and sound so that decedent was unable to see or hear the approaching train, and the evidence showed that the cars did not encroach upon the highway, it was error to refuse defendant's tendered instruction that such storage of cars was not negligence, though the fact that cars had thus accumulated should have been considered in determining whether decedent was guilty of contributory negligence under the circumstances and whether the train which struck him was being operated with due care. p. 313.

9. RAILROADS.—*Crossing Accidents.—Erroneous Instruction.— Cure by other Instruction.*—In an action for death in a railroad crossing accident, an instruction that the jury should find for plaintiff if decedent's injury was caused by defendant's negligence, unless they also found that decedent was guilty of

contributory negligence, although erroneous for not limiting the negligence affording a basis for recovery to that charged in the complaint, was corrected and the error rendered harmless by another instruction specifically informing the jury what act or acts of negligence must be proved to authorize a verdict for plaintiff. p. 314.

10. RAILROADS.—*Crossing Accidents.*—*Mandatory Instruction.*—*Omission of Essential Element.*—In an action for the death of an automobile driver in a crossing accident, an instruction, mandatory in form, that, if the gateman failed to operate the crossing gates and if decedent was free from negligence, plaintiff could recover, was erroneous as omitting the essential element of proximate cause. p. 315.

From Porter Circuit Court; *H. H. Loring*, Judge.

Action by Anna Prohl, administratrix of the estate of John H. Prohl, deceased, against the Chicago, Indianapolis and Louisville Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*E. C. Field, C. C. Hine, Crumpacker Bros.,* and *Perry McCart,* for appellant.

*LeGrand T. Meyers* and *McAleer Bros.,* for appellee.

CALDWELL, J.—The complaint discloses that on June 9, 1913, at about five o'clock p. m., John H. Prohl, appellee's decedent, was driving an automobile eastward along Clinton street, in the city of Hammond, approaching the point where appellant's railroad intersects said street; that as he neared the crossing certain safety gates that were being maintained and operated by appellant were lowered so that thereby he was struck upon the head by such gates and rendered unconscious. Whereupon the momentum of the automobile carried him upon the crossing in front of appellant's northbound passenger train, which collided with him and his automobile, whereby he was killed. Facts are averred to the effect that a short distance south of the crossing there was a curve in appellant's tracks, and that cer-

tain buildings on the south side of Clinton street and certain cars which appellant had permitted to accumulate on its sidetracks west of its main track obstructed both view and sound so that decedent in traveling towards the crossing from the west along Clinton street was unable to discover that the train was approaching from the south. It is averred that appellant was negligent in the following respects: In permitting box cars to accumulate on its sidetracks south of and encroaching upon the crossing, so that sight and sound were obstructed as aforesaid; in its manner of operating said gates required by an ordinance of the city to be maintained and operated for the safety of persons traveling on said street, in that the gates were not lowered until decedent was practically under them, whereupon they were lowered with consequences aforesaid; in running its train without sounding the whistle or ringing the bell at a speed of fifty miles per hour in violation of an ordinance of the city limiting the speed of trains within the city to six miles per hour; in failing to provide and maintain a flagman at such crossing as required by an ordinance of the city; in maintaining defective and insufficient gates, in that no means were provided whereby a traveler on the street might be warned of a purpose to lower them, and in that the watchtower connected with such gates was so located that the operator situated therein could not see a traveler approaching on the street until such traveler was very close to the crossing. There are averments that decedent knew of the existence of the gates, and that it was appellant's custom and duty to lower them as trains approached near the crossing, and thus to prevent travelers from entering thereon; that decedent approached the crossing slowly and carefully, looking and listening to detect the presence of a train, and to discover any warning

that might be given, as by the lowering of the gates or the sounding of the bell or the whistle of a locomotive; that the watchman in the tower, by reason of inattention and by reason of the rapid speed of the train, and its failure to sound the whistle or ring the bell, did not detect the approach of the train until it was within 200 feet of the crossing, at which time decedent was about under the gates, but by reason of inattention or the improper location of the tower, the watchman had not discovered decedent's presence, whereupon he carelessly and rapidly lowered the gates, inflicting the injuries aforesaid. It is averred also that the watchman was nervous, an epileptic, and a physical wreck from the use of narcotics and intoxicating liquors, and that he was incompetent and unfit to discharge the duties of his station. It is averred that decedent was an able-bodied man, in good health, thirty-nine years of age, and that he left surviving him appellee, his widow, and two infant children. A trial resulted in a verdict for $5,000, on which judgment was rendered.

The questions presented on this appeal arise under the motion for a new trial, and first as to the sufficiency of the evidence.

Appellant bases its argument that the evidence is insufficient largely on the nature of the testimony given by two boys, Joseph Riley and John Stevens. According to the testimony of these witnesses, they were nearer the scene of the accident than any other witness. They testified in detail to the facts of the occurrence and the events immediately preceding it. Riley testified that he was standing near the gate on the south side of the street and that Stevens was in a like position on the north side of the street. The former testified that decedent approached the crossing looking both to the north and the south; that he slowed his car as he neared the gates; that as he reached the gates, they came down

rapidly, struck the windshield of the car and bounded thence to decedent's head; that the blow knocked decedent partially from his seat and that the car proceeded onward, carrying him in front of the train. On his cross-examination he testified that the top of the car was up and that the descending gate drifted under the top and struck the windshield and thence to decedent's head, and that the gates commenced to descend when decedent was in front of the third house west thereof. The witness was subsequently recalled and testified that he had been mistaken in certain of his testimony on cross-examination, among other things, that the top was down, rather than up, and that the gates did not commence to descend until decedent was beneath them. His testimony shows certain other contradictions also.

The witness Stevens, who claimed that he was standing on the north side of the street near the gate, testified in detail respecting the approach of both decedent and the train and also respecting the circumstances of the accident. Appellant introduced by way of impeachment the testimony of this witness before the coroner in the latter's investigation of the accident, in which the witness stated that he was not at the crossing, but that he was standing at a point a block or more south therefrom, and that he did not see decedent approach the gates. He testified, however, in a general way before the coroner, that he saw the car and the gates come in contact, and that the car moved thence towards the approaching train.

We are not required to determine whether, aside from the testimony of the two boys, the evidence sustained the verdict. It is sufficient to say that from the testimony of the two boys there may be gathered sufficient evidence to support the verdict in its essential features, in so far as concerns the particulars of the transaction leading up to and terminat-

ing in the death of appellee's decedent. While the evidence, in so far as it is grounded on the testimony of these witnesses, is by reason of contradictions not entirely satisfactory, yet we cannot say that such testimony was in the case of each of said witnesses self-destructive. Much of the testimony of Riley and a part of the testimony of Stevens involved no contradiction. As to the former, the jury heard his admission of error, the explanation thereof and the correction. In so far as the truth rested on the testimony of these two witnesses, it was for the jury to evolve it from their entire testimony. "The reconciliation of apparent conflict between evidence of a witness on direct and cross-examination is within the rightful province of the jury." *Barr* v. *Sumners* (1915), 183 Ind. 402, 420, 107 N. E. 675, 681.

William Prohl, a contractor in the teaming business, testified that his brother, the decedent, was engaged in a like business. Basing his further testimony on his own experience and his knowledge of decedent's business, he was permitted over objection to give his judgment as to the amount of decedent's earnings per year. If the admitting of this evidence was error, it is not available to appellant as appears from the following: Said evidence was directed solely to the question of the amount of damages. Excessive damages is assigned as one of the causes for a new trial, but appellant has waived such assignment by failing to direct a point to it in his brief. Such being the situation, under the decisions of both the Supreme Court and this court, the assignment based on the admitting of said evidence presents no question for our consideration. *Peabody, etc., Coal Co.* v. *Yandell* (1912), 179 Ind. 222, 100 N. E. 758; *Pittsburgh, etc., R. Co.* v. *Macy* (1915), 59 Ind. App. 125, 107 N. E. 486; *Sovereign Camp, etc.* v. *Latham* (1915), 59 Ind.

App. 290, 107 N. E. 749. The decisions of this court above cited have received the approval of the Supreme Court by a denial of a transfer.

As we have said, there was an allegation in the complaint that Eisenhart, appellant's towerman, by reason of his physical condition, was unfit to operate the gates. On his cross-examination as a witness he testified that at one time he was employed in the United States navy. He was then asked why he quit working in the navy, to which question appellant made a general objection that the evidence sought was immaterial. The objection being overruled, the witness answered that his health failed him a little bit. It is apparent that the evidence was elicited to support the allegation of the complaint that Eisenhart was physically unfit to perform the work assigned to him. We might very well dispose of the question raised respecting the ad-

4. mitting of this testimony on the ground that an objection made in the trial court in general terms that evidence offered is immaterial presents no question on appeal. *Hicks* v. *State* (1905), 165 Ind. 440, 75 N. E. 641. But as the question may arise on a retrial, we proceed to give it further consideration.

It is our judgment that the evidence should have

5. been excluded. In cases involving the relation of master and servant, wherein the servant sues to recover for an injury alleged to have been inflicted in the course of his employment by the negligence of a fellow servant, and where what is known as the fellow-servant rule has not been abrogated, the injured servant may predicate a cause of action upon the negligence of the master in employing or retaining as an employe an incompetent fellow servant. In such a case, in order that the injured servant may be entitled to recover, it is essential that it appear that the fellow servant was incompetent or unfit; that the master en-

gaged or retained him with actual or constructive knowledge of such incompetency or unfitness, and that the injury resulted from the negligence of such fellow servant. 4 Thompson, Negligence §4882. This case, however, involves no question of injury to a servant. Whether Eisenhart was competent or fit to perform the duties assigned to him is not of controlling importance. Negligence here, in so far as that question involves Eisenhart, must be predicated on an act or omission rather than on competency or incompetency. He may have been entirely competent to perform the duties of his station, and yet if his conduct in the particular instance was not characterized by due care as measured by the standard of the man of ordinary prudence, such conduct was negligence. Conversely, Eisenhart may have been unfit and incompetent generally to perform the duties of towerman, and yet in the transaction involved here he may have exercised reasonable care as measured by the standard aforesaid. On the subject under consideration, the Supreme Court of Minnesota, in a case involving an injury to a traveler on the street by coming in contact with a street car, uses the following language: "Upon the trial, the court, against the objection of defendant, admitted evidence of the general incompetency of the motorman, based on the observations of witnesses who had seen him operate his car on prior occasions. We think this was error. The defendant is liable, if at all, for the acts of its servant upon the doctrine of respondeat superior. If the motorman was negligent on this occasion, the defendant is liable, no matter how competent he was or how habitually careful he had been on other occasions. On the other hand, if he was not negligent on this occasion, the defendant is not liable, notwithstanding that he may have been incompetent or habitually careless on former occasions. The sole issue, aside from that as

to plaintiff's contributory negligence, was whether or
not the motorman was guilty of negligence at the time
of the accident.    When the act or omission is provided,
whether it be actionable negligence is to be determined
by the character of the act or omission itself, and not by
the character of prior acts of the party committing it."
*Fonda* v. *St. Paul City R. Co.* (1898), 71 Minn. 438, 446,
74 N. W. 166, 70 Am. St. 341.

There are cases in other jurisdictions which hold that
where there is being investigated the question whether
a person negligently performed a certain act, and es-
pecially where the evidence is conflicting, it is proper to
show that he habitually performed such act in a certain
manner.   In such cases, however, such evidence is not
heard for the purpose of establishing the general com-
petency or fitness of the person under investigation,
but rather as tending somewhat to establish that on the
particular occasion he acted in harmony with his cus-
tom.   *State* v. *Manchester, etc., Railroad* (1873), 52 N.
H. 528; *Craven* v. *Central, etc., R. Co.* (1887), 72 Cal.
345, 13 Pac. 878; *Randall* v. *Northwestern Telegraph
Co.* (1882), 54 Wis. 140, 11 N. W. 419, 41 Am. Rep.
17; *State* v. *Boston, etc., Railroad* (1878), 58 N. H. 410.

In this case, however, involving an investigation of
the towerman's conduct on the particular occasion,
while we believe that an inquiry into his remote
6.    antecedents and respecting his condition, not ap-
pearing otherwise than temporary, was imma-
terial, we should not be understood as indicating such a
view respecting his condition at the particular time.
If his condition at the time was for any reason such as
to render him unable to perform his duties properly,
such condition would be a part of the transaction under
investigation and evidence respecting it should be
heard, as bearing on the question of whether he did
properly perform such duties.    On this subject the Su-

preme Court of Michigan, in a case wherein it was charged that a person on the street was injured by the negligence of a driver of a vehicle, said: "We think the condition of the driver, as to being drunk or sober at the time or about the time of this accident, was a proper subject of investigation, being part of the res gestae. It was not, however, necessary or material to go further into the question of what his habit was as to the use of intoxicating liquors, or whether or not he was a temperate man in the opinion of other people. It would have raised a collateral issue, the determination of· which would have had but slight, if any, bearing upon the question at issue in the case. We do not think his general character for sobriety was in issue or admissible any more than was his general character and reputation as a careful driver. The jury were only concerned with his condition and manner of driving on the day in question at the time of the injury to plaintiff." *Williams* v. *Edmunds* (1889), 75 Mich. 92, 42 N. W. 534. See also *Boggs* v. *Lynch* (1856), 22 Mo. 563; *Towle* v. *Pacific Improvement Co.* (1893), 98 Cal. 342, 33 Pac. 207; *Central Railroad, etc., Co.* v. *Roach* (1880), 64 Ga. 635.

The court did not err in refusing the thirteenth instruction tendered by appellant. This instruction was

7. to the effect that if appellant was found to have been guilty of negligence in no other respect than in operating its train at a greater rate of speed than is limited by the city ordinance on that subject, the verdict should be in favor of appellant. In other words, the tendered instruction was in substance that, even though appellant was guilty of negligence in operating its train in violation of the speed ordinance, and such negligence was the proximate cause of decedent's injury and death, he being without fault, there could be no recovery. Negligence in the viola-

tion of the speed ordinance is one of the wrongful acts charged against appellant by the complaint. There was abundant evidence that appellant violated such ordinance. There is a general averment that the negligence charged was the proximate cause of the injury suffered. We find nothing in the complaint that excludes negligence in violating the ordinance from being considered as the wrongful conduct on which a verdict might be based. Of course, as to whether such act of negligence was proven, and, if so, whether it was the proximate cause of the injury, were questions for the jury. It may be said also that appellant by its tendered second instruction, given by the court as its fourteenth instruction, recognized that the negligence charged and on which a verdict might be based was broader than as indicated by the thirteenth instruction refused. Appellant's second instruction given as the court's fourteenth instruction was to the effect that a verdict in appellee's favor might be based on negligence of the towerman or negligence in operating the train.

It is our judgment that the court erred in refusing the fourteenth instruction tendered by appellant. This instruction was to the effect that it was not negligence on the part of appellant to store cars on its sidetrack south of the south line of Clinton street. The evidence practically, if not entirely, without contradiction, was to the effect that the cars did not encroach upon the street, and that they were stored on the sidetrack in the usual manner. Appellant had a right for its own proper and legitimate purposes to store its cars upon the sidetracks, and, so long as it did not encroach upon the street by so doing, actionable negligence could not be predicated on the fact that it did so. Doubtless, however, if the presence of cars obstructed the view of appellant's employes operating the train, and thus rendered it more difficult for them

to. detect the approach of a traveler on the street, or if by reason of the presence of the cars the latter might less easily discover an approaching train, such facts should be considered in determining the existence of negligence based on other acts or omissions, and in determining whether the traveler was guilty of contributory negligence. It is true, as we have said, that the court by the fourteenth instruction in effect informed the jury that a verdict could be based on no other acts or omissions than those pertaining to the operation of the train and the safety gates, but in view of the allegations of the complaint, and the state of the evidence, it is our judgment that appellant was entitled to the specific instruction requested. *Cleveland, etc., R. Co.* v. *Wynant* (1888), 114 Ind. 525, 533, 17 N. E. 118, 5 Am. St. 644; *Childress* v. *Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 105 N. E. 467; *Evansville, etc., R. Co.* v. *Clements* (1903), 32 Ind. App. 659, 70 N. E. 554.

It is urged that the court erred in the thirty-fourth instruction. This instruction was to the effect that, if the jury should find that the injury occurred by reason of appellant's negligence, the verdict should be for appellee, unless it appeared also that decedent was guilty of contributory negligence. Appellant bases its criticism of this instruction on the fact that by its terms the negligence that might afford a basis of recovery was not limited to the negligence averred in the complaint. The instruction considered alone is subject to criticism as argued, and, when considered with other instructions, it cannot be unqualifiedly approved. However, the subject of the instruction is the elements that must be considered by the jury in arriving at a verdict. These elements are negligence, proximate cause and contributory negligence; that, if it affirmatively appeared that the first two elements had been established, the verdict should be for

appellee, unless it affirmatively appeared also that decedent was guilty of contributory negligence. The scope and subject-matter of such instruction were not otherwise than as indicated. Whatever inaccuracy there was in the instruction was corrected, and wherein it was short it was supplemented by the court's fourteenth instruction, by which, as we have said, the court specifically advised the jury as to what act or acts of negligence must have been proven in order that appellee might recover.

The thirty-ninth instruction given by the court was to the effect that, if the gateman failed to operate the gates and decedent's view of the approaching train was obstructed, and he was free from fault, the verdict should be for appellee. This instruction is hypothetically mandatory in form and substance. Among its defects is its total omission of the element of proximate cause. It was error to give this instruction.

Other questions presented are not considered. For the errors indicated, the judgment is reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 115 N. E. 962. Railroads: (a) accidents to automobiles at crossings, Ann. Cas. 1913B 680, 1915B 767; (b) liability for injury at crossing as affected by cars blocking crossing unlawfully, Ann. Cas. 1915B 642. See under (5, 7, 8 33 Cyc 1080, 1081.